ROBERT E. BURGER, Plaintiff, *v.* WILLIAM D. KOELSCH and Another, Defendants.

*City ordinances — a contract in violation of, is void — action not maintainable thereon — parties not obliged to make changes therein to render it valid — not the foundation of an implied assumpsit.*

City ordinances have the force of law, and contracts in violation of them are illegal and void, whether the parties knew the law or not.

When a contract is made to do an act in the construction of a building prohibited by statute, no action can be maintained to enforce performance or to obtain damages for a breach thereof; nor if the claim be founded upon the contract will an action on the case for damages be supported.

In an action between the parties to a contract having equal opportunities to know, when they entered into the same, of the existence of an ordinance making it illegal, the defendant is under no obligation to make changes in the same so as to render it legal where the alterations are not trivial and inexpensive. The rule might be different where the changes were trivial.

An illegal contract cannot be made the foundation of an implied assumpsit, and a party to an illegal contract will be released therefrom while it remains executory.

When it is made to appear upon the trial of an action that the object thereof was to enforce an illegal contract, it is the duty of the court to refuse to proceed further with the action and to leave the parties where they have placed themselves.

MOTION by the defendants, William D. Koelsch and another, for a new trial on a case containing exceptions ordered to be heard at the General Term in the first instance after a trial at the Erie Circuit, where a verdict for $350 was rendered in favor of the plaintiff, by direction of the court, on the 9th day of May, 1893.

*George M. Osgoodby*, for the plaintiff.

*Frank R. Perkins*, for the defendants.

LEWIS, J.:

The parties entered into a written contract on the 18th day of June, 1892, by the terms of which the plaintiff agreed to provide the materials and construct for the defendants a three-story brick building on Chenango street in the city of Buffalo for the consideration of $9,800, according to certain plans and specifications furnished by the defendant and forming part of the contract.

The lot upon which the building was to be located was thirty feet front and rear, and ninety-two feet in depth.

The plans located the front of the proposed building upon the line of Chenango street and called for bay windows upon the front of the building, projecting two feet into the street. The building was to be twenty-eight feet wide upon Chenango street and the entire width of the lot in the rear, and seventy-two feet long. The contract provided that the outside brick walls of the first story should be twelve inches only in thickness. An ordinance of the city of Buffalo, in force at the time of making this contract and still in force, provided that the external walls of the first story of three-story brick buildings constructed in the city should be of the minimum thickness of sixteen inches. The ordinance further provided that every building erected contrary to the provisions of the ordinances of the city shall be deemed to be a common nuisance, and the superintendent of buildings may order the same removed, and in case the owner shall neglect or refuse to remove such building within five days after notice so to do, the board of public works may remove it at the expense of the owner.

The charter of the city provided that before the construction of any building in the city is commenced, the owner shall file with the superintendent of buildings a sworn statement of the character and use of the building he proposes to erect, and its location on his premises, with a copy of the plans and specifications of such building, which statement shall contain the name and residence of the owner and the purposes for which the building is designed.

The superintendent shall, within ten days after the filing of the plans, specifications and statement, approve the same or indicate in writing the alterations to be made therein to make them comply with the general laws of the State and ordinances of the city. But no building shall be erected or remodeled until the approval of the superintendent shall be obtained and a written permit issued by him to the owner or builder of such building.

The defendants presented their plans and specifications to the superintendent for the purpose of obtaining the required permit. He refused his consent for the reasons : *First*, that the plans contemplated that the brick walls of the first story of the building were to be only of the thickness of twelve inches ; *second*, that the bay win-

dows would encroach upon the street, and various other objections to the plans were made by the superintendent.

Defendants thereupon informed the plaintiff of the obstacles to the erection of the building, and the plaintiff suggested that changes be made in the plans and specifications, so that they would conform to the ordinances of the city.

The defendants declined so to do because of the additional expense, and for the reason that the increase of the thickness of the walls would make the stores, to which the first story was to be devoted, too narrow; the plaintiff thereupon proposed to the defendants that the plan of building of brick should be abandoned, and that the building should be constructed of wood, to which the defendants consented, and procured plans and specifications for a wood building, and submitted them to the plaintiff and other builders for bids.

The defendants thereafter let the contract to build a wooden building upon the lot to another builder, whose bid was considerably lower than that of the plaintiff's; the plaintiff thereupon claimed damages of the defendants for a breach of the contract, and instituted this action.

It was stipulated on the trial that the plaintiff's damages were $350, and the court directed a verdict for the plaintiff for that amount.

No exception was taken by the defendants to the direction of the verdict. At the close of the plaintiff's evidence the ordinance prohibiting the erection of the building with the walls of the thickness mentioned was in evidence, and the defendants, at the close of the plaintiff's case, moved for a nonsuit.

The motion was denied and defendants duly excepted. It, therefore, appeared at this stage of the trial that the construction of the building according to the contract would have been in direct violation of the city ordinances; it would have been a nuisance if constructed which the board of public works could have abated. The ordinance absolutely prohibited the erection of the building according to the terms of the contract.

The agreement was, therefore, unlawful. City ordinances have the force of law, and contracts in violation of them are illegal. (1 Dillon's Mun. Corp. § 308 and note.)

A contract void for illegality is no contract. (2 Whart. Cont. § 935.)

Where a contract is to do a thing which cannot be performed without a violation of the law it is void, whether the parties knew the law or not. (Law of Contracts, by Sir W. R. Anson, 191.)

When a contract is made to do an act prohibited by statute no action can be maintained to enforce performance, or to obtain damages for a breach thereof; nor if the claim be founded really upon the contract will an action on the case for damages be supported. (1 Story on Cont. § 769; see Metc. on Cont. 247–250; Broom's Com. Law, 357; *Brinkman* v. *Eisler*, 7 N. Y. Supp. 193; affd., 16 id. 154.)

It is claimed by the plaintiff that it was incumbent upon the defendants to so change and modify the plans and specifications that they would not conflict with the ordinances of the city.

There is an absence of any evidence as to the increased expense of constructing the building with sixteen instead of twelve-inch walls. But manifestly the additional expense would have been considerable, and then the width of the stores would have been materially lessened, and we do not see, as between the parties having equal opportunities to know, when they entered into the contract, of the existence of the ordinance making the contract illegal, that the defendants were under any obligations to make the changes in the plans and specifications suggested. Had the alterations been trivial and inexpensive, it may be that the rule would be different.

A further answer to this claim is that the complaint is based upon the original contract; the contract is alleged, the breach stated and damages are claimed on account thereof.

There is no allegation that the defendants refused to make the changes suggested by plaintiff in the contract so as to avoid the illegal features; if so changed, it would have been a new contract involving new bids for the work; the defendants were not obliged to make a new contract with plaintiff; the plaintiff occupies the position of appearing in court with an illegal contract — one that he was powerless to perform — a contract which, if he had performed, he would have created a nuisance, and is asking damages for the breach of it.

We are not referred to any case holding that, when parties have made an illegal contract, either party is under an implied obligation

to make a new one; if one is bound so to do, the other must be, for there must be mutuality of contract. An illegal contract cannot be made a foundation of an implied assumpsit. (*Gillet* v. *Phillips*, 13 N. Y. 119.) A party to an illegal contract will be released therefrom while it remains executory. (*Strait* v. *Nat. Harrow Co.*, 18 N. Y. Supp. 224; 1 Story on Cont. § 617.)

It is claimed by the plaintiff that the defendants' answer failed to raise an issue as to the illegality of the contract. The answer in that regard is informal and somewhat imperfect.

It does, however, allege that the defendants presented their plans and specifications to the superintendent of buildings, and that he, by virtue of his office and the law and ordinances, did insist and maintain that said building should not and would not, under the law and ordinances aforesaid, be erected or constructed according to said plans and specifications, and thereby prevented the erection and construction of said building under and according to said contract.

Then follow allegations to the effect that the contract was abandoned by the mutual consent of the parties and other plans adopted as stated.

The prohibitory ordinance mentioned was received in evidence without the question being raised by the plaintiff as to the sufficiency of the defendants' answer. Had the attention of the court been called to the answer, it could, if necessary, have been so amended as to obviate the objection; it is too late upon appeal to raise the question.

But, without reference to the pleadings, when it was made to appear that it was an illegal contract plaintiff was asking to enforce, it was the duty of the court to refuse to proceed with the action further, and leave the parties where they had placed themselves. (*Richardson* v. *Buhl*, 77 Mich. 661.)

The plaintiff failed to make a case entitling him to a verdict.

The defendants' motion for a nonsuit should have been granted; the verdict should be set aside and a new trial granted, with costs to abide the event.

DWIGHT, P. J., HAIGHT and BRADLEY, JJ., concurred.

Defendants' motion for new trial granted, with costs to abide the event.