[No. 15602.   Department Two.   April 22, 1920.]

CHARLES H. BEBB et al., Respondents, v. F. M. JORDAN, Appellant.[1]

MUNICIPAL CORPORATIONS (313, 315)—POLICE POWER—REGULATION OF BUILDINGS—HEALTH AND FIRE PROTECTION—ORDINANCES—POWERS OF CITY. Rem. Code, § 7507, providing that cities of the first class may regulate the manner in which buildings shall be constructed, authorizes a city to provide by ordinance for light and air area and open spaces at the rear of apartment houses.

SAME (327)—REGULATIONS—REASONABLENESS. It is a reasonable exercise of legislative power to require that an apartment house in a populous city have a court of a prescribed area for light and air and an open space in the rear.

CONTRACTS (134) — PERFORMANCE — SUFFICIENCY — ARCHITECT'S PLANS VIOLATING BUILDING ORDINANCE. An architect employed to make plans for an apartment house of a given style and demensions cannot recover on quantum meriut for plans for a building which would be a violation of the building ordinances, where the architect had notice of the location; and it is immaterial that the contract was for a building similar to another which, unknown to the owner, violated the ordinances.

WORK AND LABOR (14)—PART PERFORMANCE—COMPLETION PREVENTED BY DEFENDANT. On quantum meriut for the value of services of an architect in drawing plans for a building, the owner, after stopping the work before the plans were completed, cannot be heard to say that the plans when completed would have violated the building ordinances of the city; since such fact was rendered uncertain by defendant's acts (Bridges, J., dissenting).

Cross-appeals from a judgment of the superior court for King county, Hall, J., entered February 14, 1919, upon findings in favor of the plaintiffs, in an action on contract, tried to the court. Reversed on defendant's appeal.

George E. de Steiguer and Peters & Powell, for appellant.

Kerr & McCord (Wm. Z. Kerr, of counsel), for respondents.

[1] Reported in 189 Pac. 553.

FULLERTON, J.—In this action the plaintiffs, Bebb & Gould, sued to recover from the defendant, Jordan, some $10,058.16, for services rendered as architects in designing and drawing plans and specifications for an apartment building which the defendant contemplated constructing. After issue joined, the action was tried by the court sitting without a jury, and a judgment was awarded the plaintiffs in the sum of $4,071.80. From this judgment, both parties appeal.

The record discloses that, sometime in October, 1916, the defendant, being then the owner of a vacant lot in the city of Seattle, conceived the idea of improving the lot by erecting thereon an apartment building. There was then a six-story apartment building upon a nearby lot owned by one W. D. Perkins and known as the Sheridan Apartments. The defendant examined the building and was given to understand that it cost less than $100,000. He then went to the plaintiffs' offices and, meeting Mr. Bebb of the plaintiffs' firm, told him he thought of improving his lot, and what he had learned of the Perkins building, requesting Bebb to examine the building and ascertain what a similar building would cost, saying to him further, that if the cost of a similar building, including architect's fees, would not exceed $100,000, he would erect such a building upon his lot. Mr. Bebb procured the plans of the building, consulted with a contractor who had bid on its construction, and ascertaining to his own satisfaction that the building could be constructed within the cost as limited, so informed the defendant. The defendant thereupon told him to prepare the plans and specifications for the building. The work was entered upon, but before the plans were completed the defendant conceived the idea of increasing the building from a six-story structure to one of eight stories. He went to the plaintiffs' offices and, finding that Mr.

Bebb was away on a business trip in the east, took the question up with the person in charge of the offices. He was told by this person that the addition of two stories would add to the cost of the building approximately the sum of $30,000. He thereupon directed plans to be drawn for a building of eight stories instead of six. This change required the strengthening of the supporting parts of the frame work of the lower stories to take care of the additional weight, and consequently the preparation of practically new plans and specifications. While the general plan of the building would remain the same, the dimensions of the rooms would not, as the increased size of the supporting parts would take up more of the available space. New plans were, in consequence, prepared, and when completed bids were taken for the construction of the building, the lowest bid received was in excess of the estimated costs by approximately $40,000. The defendant thereupon abandoned the enterprise, and refused to pay for the architects' services. This action was then brought, with the result before stated.

The defendant interposed a number of defenses, the principal defense being that the plans prepared were useless to him, as a building erected on the lot in question in accordance therewith would be a violation of the building ordinances of the city of Seattle. These ordinances require, for a building of the height of this one, a court area for light and air of sixteen hundred and eighty square feet, whereas the plans provide for an area of twelve hundred and eighty-eight feet only. The ordinances also require, of a building erected upon a lot in the situation of this lot, yard room on the alley thirteen feet in depth, whereas these plans provide for a building covering the entire lot, leaving no space as yard room. It was testified, apparently without contradiction, that to make the plans comply with

the first of these conditions would necessitate the cutting out of an apartment of two rooms on each of the floors, and that to comply with the second would require a redrawing of the entire plans.

It cannot be successfully denied, we think, that defects of this sort are defects of substance, and not mere immaterial variances, and that, if the city has power to enact such ordinances, and the particular ordinance is not an arbitrary exercise of the power, the defendant could not lawfully erect a building, in accordance with the plans submitted, on the lot for which the building was designed. The plaintiffs, however, question both the power of the city to enact the ordinance and its reasonableness. The first of these questions does not require discussion at length. By the express provisions of the statute (Rem. Code, § 7507), municipalities of the first class are given power "to regulate the manner in which stone, brick, and other buildings, . . . shall be constructed and maintained." As the city of Seattle is of the designated class, and as the ordinance in question is regulative in its nature, there is no question of the city's power to enact it, unless the legislature which delegated the power to the city is itself without such power. But regulations as to the height and character of buildings which may be erected in populous communities are common, and if aimed at promoting the public health, safety or welfare, and tend reasonably so to do, are open to no constitutional objection on the question of power to enact such ordinances.

Whether a particular ordinance is arbitrary or unreasonable is usually a more serious question. In this instance we cannot conclude that the ordinance is so. In *Olympia v. Mann*, 1 Wash. 389, 25 Pac. 337, 12 L. R. A. 150, we held an ordinance establishing fire limits and prohibiting the construction of wooden buildings

therein a reasonable exercise of the power; and to the same effect is *Seattle v. Hinckley,* 40 Wash. 468, 82 Pac. 747, 2 L. R. A. (N. S.) 398, where we held valid an ordinance requiring the construction on certain buildings of fire escapes of a designated kind. In *Eubank v. Richmond,* 110 Va. 749, 67 S. E. 376, a statute authorizing cities and towns to establish building lines adjoining a city park so that buildings shall be at least a certain distance from the street line was held to be a valid exercise of the police power. In *Building Commission of the City of Detroit v. Kunin,* 181 Mich. 604, 148 N. W. 207, Ann. Cas. 1916C 959, a provision in the building ordinances of the city named, that in the rear of every tenement house, subsequently erected, there shall be a yard not less than fifteen feet in depth extending the entire width of lot, open "from the ground to the sky," was held to be reasonable and a valid exercise of the police power. The principle of these cases sustain the ordinance here involved. If it be a legitimate exercise of legislative power to prescribe fire limits and restrict the character of buildings that may be erected therein, or to require buildings to be equipped with fire escapes of a certain design, or to require buildings to comply with a prescribed street line facing a public park, or to require an open space in the rear of a tenement house, then clearly it is a reasonable exercise of the same power to require that a building designed for apartment use have a court of a prescribed area for light and air and an open space in its rear. The purpose in each instance is the same, namely, the protection of the lives, health and comfort of the people of the city.

The plans and specifications being thus unsuitable for a building on the described lot, can the architects recover on *quantum meruit* for the reasonable value of their services in preparing them? Unquestionably an

architect, when employed generally to draw plans and specifications for a building of a given style and dimensions, may recover for the reasonable value of his services on a compliance with the terms of the employment, even though the building planned be one which the employer cannot erect at the place it is his purpose to erect it. But the rule is otherwise where the lot or the location of the lot on which the building is intended to be erected is made known to him. In such a case, he is bound to know the building restrictions of the particular place and draw the plans and specifications accordingly, else forfeit his right of recovery for his services. This on the familiar principle that, in all such contracts of employment, there is an implied condition that the work when completed shall be suitable and proper for the purposes intended. An architect is an expert in his particular line of work. He so holds himself out, and is employed because he is such. He is not only bound to know the character of materials necessary to the construction of a safe and durable building of the design required, but is bound to know also the building restrictions imposed by the law of the place where he is informed the building is to be erected.

In *Straus v. Buchman,* 96 App. Div. 270, 89 N. Y. Supp. 226, the plaintiff purchased a partially completed building and employed the defendants as architects to superintend and supervise the remainder of the work to be performed thereon. At the time of the purchase, a change in the plans of the building, of which the defendants were fully advised, was agreed upon between the plaintiff and his vendor, the change requiring a new support for certain tail beams. These the architects permitted to be rested on studding partitions, contrary to the requirements of a statute applicable to buildings at that place. The building when

completed proved to be defective, and the plaintiff sued the defendants in damages. Holding the defendants liable, the court said:

"The placing of these timbers, and the manner in which they were secured, was not only a serious defect, but a direct violation of the statute in force at that time relating to the construction of buildings in the city of New York (section 476, c. 275, p. 547, Laws 1892), which provided that 'in no case shall either end of a beam or beams rest on stud partitions.' It was the duty of the defendants, under their contract with plaintiff, not only to see that the beams were properly placed, but especially to see that the placing of them conformed to the requirements of the statute. This they failed to do."

In *Nave v. McGrane,* 19 Idaho 111, 113 Pac. 82, the plaintiff, an architect, sued to recover for his services in drawing plans for a building which the defendant contemplated constructing. At the trial, it was shown that the building, as designed by the architect, violated the building ordinances of the city where the building was intended to be erected. It was held that the architect could not recover, the court saying:

"So far as an architect is concerned, there is always an implied contract that the work shall be suitable and capable of being used for the purpose for which it is prepared. Apart from questions of public policy, this principle would prevent him from recovering upon plans and specifications prepared in violation of law, unless he was directed to so prepare them by the owner."

See, also, *Progress Amusement Co. v. Baker,* 106 Wash. 64, 179 Pac. 81; *Hart v. City Theatres Co.,* 215 N. Y. 322, 109 N. E. 497; *Burger v. Roelsch,* 77 Hun 44, 28 N. Y. Supp. 460; 5 C. J. 260.

The trial court in its findings, while recognizing that the plans and specifications as drawn violated the building ordinances of the city of Seattle, held the archi-

tect excused because the defendant desired a building in conformity with the Sheridan Apartments, and that this building violated the ordinances in the same manner that the plans submitted violated them. But we think it plain that this fact would not excuse the architects. The rule might be otherwise had the defendant known the fact and directed plans to be drawn in accordance therewith in spite of such knowledge. But the evidence makes it clear that he had no such knowledge, and that a mere inspection of the building and the ordinances would not disclose the fact to a person not skilled in, building construction. On the other hand, the plaintiffs did know of it, or ought to have known of it, and it was negligence on their part not to so inform the defendant before entering upon the work of drawing the plans. It follows there can be no recovery for the plans of the eight-story building.

As to the services performed on the plans for the six-story building, we think the plaintiffs are entitled to recover their reasonable value. The defendant employed the plaintiffs to prepare them and stopped the work thereon before they were completed. By these acts, unless a sufficient reason intervened, he obligated himself to pay such sum as the services performed thereon were reasonably worth. The defendant seeks to escape liability by showing that the plans, as far as they had been prepared, contemplated a building which could not be constructed within the limit of cost agreed upon and showed, as do the plans for the building of eight stories, a violation of the city ordinances. As to the first of these objections, the evidence was contradictory and, to our minds, supports the one theory as well as the other. But we think the true answer is that the plans were incomplete when the defendant stopped work upon them, and that he cannot now be heard to say that, when completed, they would have

violated the contract as to cost, or the city ordinances, or would have been otherwise defective. These are matters that cannot now be certainly known, and the reason they are in this uncertain condition is because of the defendant's acts, not because of the acts of the plaintiffs.

The plaintiff Bebb testified that the reasonable value of the services rendered by his office on these plans was $3,100. In this he has the support of other architects, while there is no evidence to the contrary. We think, therefore, that the sum named should be the measure of the plaintiffs' recovery.

The judgment entered is therefore reversed, and the cause remanded with instructions to enter a judgment in favor of the plaintiffs for $3,100.

HOLCOMB, C. J., TOLMAN, and MOUNT, JJ., concur.

BRIDGES, J. (dissenting).—I heartily concur in that part of the foregoing opinion which denies relief to respondents, but I cannot agree that they are entitled to any judgment in their favor. It is plain, to my mind, that the original agreement for plans and specifications for the six-story building, afterwards became merged in the contract for the eight-story structure. I cannot agree that there were two contracts and that recovery may be had on one and denied on the other. I am therefore of the view that the judgment should be reversed and the case remanded with instructions to dismiss.