# Richmond

WALTER M. BOTT V. PHILIP B. MOSER.

February 26, 1940.

Record No. 2154.

Present, All the Justices.

The opinion states the case.

*Maurice B. Shapero* and *Rixey & Rixey,* for the plaintiff in error.

*Eastwood D. Herbert,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This is an action at law, by notice of motion for judgment, instituted by the defendant in error, an architect, against the plaintiff in error, on account of a claim for compensation for his services for drawing plans and specifications for a building to be erected upon a certain lot in the city of Norfolk, the sum claimed being $2,300.00.

The parties will hereafter be referred to as plaintiff and defendant, which was their relation in the trial court.

There were two trials of the case. In the first, the jury failed to agree upon a verdict. In the second, there was a verdict for the plaintiff for the sum of $1,200.00, which was confirmed by the court. The defendant obtained from this court a writ of error. His petition is founded upon five assignments of error, only one of which, we think, needs to be discussed. Its determination disposes of the case. He alleges the commission of error by the court in overruling his motion to set aside the verdict as being contrary to the law and the evidence, and render judgment for him. The basis for the motion is succinctly stated in the petition:

"The plaintiff is not entitled to recover for the reason that he has not produced a set of plans according to which a building can be erected within the law, on the lot for which they were drawn, because they violate the Zoning Ordinance of the City of Norfolk."

The facts show that the defendant acquired a lot in the city of Norfolk, on the corner of Hampton Boulevard and Spottswood avenue, for the purpose of erecting thereon an apartment house. In its acquisition he sought the offices of the plaintiff, who became the intermediary between him-

self and the owner of the lot. The lot is irregular in shape, which was known to the plaintiff. He was engaged to draw the plans and specifications for the building to be erected on the particular lot. At first it was the intention of the defendant to have a building which would provide 32 apartments. It was to be four stories. Later, in order to reduce the expense, a three story building to comprise 24 apartments was determined upon. Two sets of drawings and specifications were made by the plaintiff. On account of the defendant's failure to make the necessary financial arrangements, his first efforts to carry out his building plans came to naught. Subsequently they were renewed and the second set of plans and specifications were made by the plaintiff. For the first set he was paid the sum of $500.-00. This was not the price agreed upon for the work but it was the result of some sort of an adjustment between them. The plaintiff made the second set of plans without having any agreement as to compensation therefor. He admitted that he never submitted his plans to the building inspector for the city for his approval. He was perfectly cognizant of the Norfolk City zoning ordinance and its restrictions upon the erection of any building proposed to be constructed upon the lot in question. The ordinance contained what is called "set-back" restrictions, which were perfectly plain and understandable. The evidence developed the fact that neither of the two sets of plans fitted the allowable buildable space under the ordinance; that the first set of plans contemplated a building which was 18 feet and 4 inches too long on Spottswood avenue, and the second set of plans called for a building 10 feet and 10 inches too long along the same avenue. It is thus clear that the plans were not within the restrictive requirements of the law, indeed, they were so far outside of it as to constitute an impossible discrepancy.

The plaintiff undertook to minimize this defense by urging that a competent builder, or contractor, could readily reduce the size of the rooms of the apartments and shrink them in other ways so as to meet the exactions of the ordi-

nance. However, a general contractor, V. T. Myers, who happened to be a member of the contracting firm which was the successful bidder to erect the building in question, and who was introduced as a witness by the plaintiff, answered as follows these questions:

"Q. Suppose you had plans that you took into the Building Inspector, and he said, 'These plans call for a building that is between 11 and 12 feet too long,' wouldn't you take that up with the architect and have him correct it?

"A. If I was building the building, he would have to give me some new measurements on the plans. I would not take it upon myself to determine where the cut should be made.

"Q. That is the architect's work?

"A. The architects would make those cuts and not I.

    \*        \*        \*        \*        \*        \*        \*

"Q. The brainwork goes into the arrangement of the rooms, doesn't it?

"A. It certaintly does to a large extent."

So we have this witness, who is certainly competent to speak, saying that the plans would have to be changed and that he would not undertake to alter the architect's work—that the rearrangement of the rooms required brainwork. It is fairly inferable that the brainwork referred to must emanate from the architect.

The evidence shows, in fact, the plaintiff admits, that he did not at any time present plans that were usable for the purpose of the defendant, or that were within the law. He did not at any time offer to change his plans or to redraft them to accomplish the purpose for which they were drawn.

In American Jurisprudence, vol. 3, page 1007, is found the following:

" \* \* \* Nor can an architect employed to draw the plans and specifications for a building on a particular lot recover compensation if he produces plans for a building which, because of municipal building regulations, cannot be erected on the lot specified. \* \* \* "

In the new work, Corpus Juris Secundum, Architects, vol. 6, page 308, section 14, we find the following:

" * * * but if the architect knows the place where it is intended to erect the building he must know the building restrictions of that particular place and must draw the plans and specifications accordingly or else forfeit his right of recovery for his services. So the architect cannot recover for his plans and specifications when the building, if erected in accordance with them, would violate the building ordinances of the place at which it is to be erected unless he was directed by the owner so to prepare them."

There is no contention, here, that the defendant directed the plaintiff to prepare his plans as they were presented.

The above quotations from the text writers were based upon the leading case of *Bebb* v. *Jordan,* 111 Wash. 73, 189 P. 553, 9 A. L. R. 1035. This case is directly in point and is quite illuminative of the questions at issue. It holds that an architect cannot recover on *quantum meruit* for the reasonable value of his services for preparing plans and specifications which are unsuitable for a building on the particular lot if the lot or its location was made known to him; that he is bound to know the building restrictions of the designated place, and draw the plans and specifications accordingly.

See also, *Straus* v. *Buchman,* 96 App. Div. 270, 89 N. Y. S. 226; *Nave* v. *McGrane,* 19 Idaho 111, 113 P. 82; *Davis* v. *Boscou* (1925), 72 Cal. App. 323, 237 P. 401, 402.

We reverse the judgment of the trial court and enter judgment for the plaintiff in error.

*Reversed and judgment entered.*