84 So.2d 44 (1955)
Al BRENNER, Harvey Brenner, Abe Danches, Mabel T. Brenner, Alice Danches, and Louise Brenner, Appellants,
v.
Charles SMULLIAN, Appellee.
Supreme Court of Florida. Special Division A.
December 14, 1955.
Rehearing Denied January 26, 1956.
*45 Milton M. Ferrell and J.M. Flowers, Miami, for appellants.
Irwin E. Kott, of Myers, Heiman & Kaplan, Miami, for appellee.
WILLIAM P. ALLEN, Associate Justice.
This case is an appeal from the Circuit Court of Dade County, enforcing certain liens against the owners of the property in the City of Miami Beach, Florida.
The bill of complaint was brought to foreclose eight mechanics' liens aggregating approximately $24,000. All of the liens prior to suit were assigned to the plaintiff below, appellee here, Charles Smullian. The appellants, as lessors, leased the real property involved to Alton Road Catering Company, which lease contained a covenant upon the part of the lessee not to make any changes or alterations without the consent of the lessors. The original lessee assigned the lease to Ciro Operating Company, a Florida corporation. The sub-lessee began to make improvements without the consent of lessors and was stopped by the lessors from proceeding with the work of repairing and altering the premises.
The sub-lessee and the lessors entered into a modification of the lease, after which the sub-lessee, Ciro Operating Company, proceeded with the changes that had been stopped by the lessor.
The liens in this case accrued primarily from the furnishing of materials to the job in question and certain specialized work done on the premises.
The first question involved in this case is whether or not under the original lease, the amendments thereto and the facts involved in the case, the sub-lessee was required by the lessor to do the work out of which these liens accrued.
Section 84.03(2), Florida Statutes, F.S.A. provides:
"Except as provided in §§ 84.12 and 84.13, such liens shall extend to, and only to, the owner's right, title or interest existing at the time of the visible commencement of operations or thereafter acquired in the real property (not exceeding forty acres of land). When an improvement is made by a lessee, in accordance with a contract between such lessee and his lessor, liens shall extend also to the interest of such lessor. If any part of the real property subject to such liens be removed before the discharge thereof, such removal shall not affect the rights of lienors in respect to either the remaining real property or the part so removed."
*46 The above section has been construed by this court to make the lessor's interest in the property liable for any construction work done by the lessee only if the lease agreement required the lessee to make the alterations or to effect the improvements involved. An acquiescence on the part of the lessor to the improvements does not render the interest of the lessor liable but affects only the interest of the lessee in the premises.
In the case of Masterbilt Corporation v. S.A. Ryan Motors, Inc. of Miami, 149 Fla. 644, 6 So.2d 818, this court held that an instrument whereby the lessor authorized lessee to remodel leased premises which had been used as automobile display room to a place suitable for a restaurant in accordance with plans prepared by an architect was insufficient to establish a "lien" in favor of the contractor which contracted with sub-lessee for the remodeling, where signature of neither the contractor nor the sub-lessee appeared on the instrument and consent to remodel did not grant to contractor authority to do the work and it was not shown that lessor or lessee knew or had negotiations with the contractor incident to the alterations. In the above case the repairing of the premises was done by a sub-lessee and the contract was between the plaintiff contractor and the sub-lessee. In its opinion, the court said, 6 So.2d at page 820:
"The owner's consent for alterations of the building so that the same could be used as a restaurant was first to be obtained in writing as a prerequisite. The owner simply examined the plans and specifications as prepared by the architect and granted its formal approval. The consent of the owner for the improvements according to the plans did not confer on or grant to the Masterbilt Corporation the authority to do the work. In fact, it nowhere appears that the owner of the property, or its lessee, knew or had negotiations with it in any manner incident to the alterations. If the owner was to obligate its property to the lien of the act, certainly some instrument in writing should have been prepared and signed. Subsections (1) and (2) of Section 3 of Chapter 17097 provide an attaching date of the lien and the extent thereof.
"The Masterbilt Corporation had no agreement or contract with the owner, or its lessee, for the furnishing of labor and materials and the construction work necessary to convert the show room into a place suitable for a restaurant. If the appellant desired to create a lien on the property as against the owner, notice to the owner was necessary in accordance with the several provisions of Section 4, in the absence of a contract between the contractor and the owner."
There is no contention on the part of the parties to this action that the original lease authorized or permitted the lessee to alter the premises. After construction had been started in violation of the original lease and the sub-lessee and his contractor had been stopped, the parties agreed on a modification of the lease. On page 24 of the transcript, shown as plaintiffs' Exhibit A, appears a modification of the lease which recites that the lessor had previously entered into a lease dated October 11, 1950, with the Alton Road Catering Company as lessee, and the said lease had been assigned to Ciro Operating Company, and that the parties now desire to make certain modifications. Paragraph 3 of the contract, Tr. 25, provides:
"The lessee has asked permission of the Lessor to make certain additions and alterations to the demised premises and the parties hereto are about to enter into an agreement simultaneously herewith to cover that matter."
This paragraph then proceeds to cover certain questions involving taxation, etc.
On page 27 of the transcript appears plaintiff's Exhibit C, which was the agreement entered on the same date between the original lessors and owners of the property and Ciro Operating Company, the sub-lessee. This agreement provides:

*47 "Whereas, the parties hereto have this day entered into a Modification of Lease covering premises at 1827 Alton Road, Miami Beach, Florida, and
"Whereas, the second party desires to make certain additions and alterations to said premises, and
"Whereas, the first parties will consent to said alterations and improvements being made upon the terms and conditions hereinafter set forth."
The lease then provides that the second party at its own cost and expense will make and complete alterations in accordance with plans and specifications prepared by an architect who had drawn these plans before this instrument was entered into. Section 2 required the sub-lessee to enter into a fixed contract with the G.E. Construction Company, who had been selected by the second party for the completion of said construction at a cost of approximately $30,000, and, as a part of the agreement, the second party, the sub-lessee, was immediately to make payment to the said G.E. Construction Company of an aggregate sum of not less than $25,000, and that the contractors would specifically agree to accept the personal credit of the second party for the difference between said sum of $25,000, and the actual cost of said alterations, and, in addition thereto, the sub-lessee would deliver a duly executed release of lien from the general contractor for the protection of the first parties, the owners. The contract in Section 3, on page 28 of the transcript, provided that all additions, alterations and improvements made to the premises should belong to and become the property of the owners (the original lessors) and should not be removed from the premises. Paragraph 4, on page 29 of the transcript, provides:
"The south wall of the demised premises as described in the original lease has been disrupted by the severance of said property from the previously existing Alton Dade Hotel, which was a connecting structure. As a result of said severance a portion of the premises originally demised was removed and as a consequence said space allocated for waiter's dressing rooms was made not available to the lessee. Consequently the second party shall provide the additional construction necessary to provide the waiter's dressing rooms and upon the completion of said structure and satisfactory proof that the same has been paid for, the Lessee shall become entitled to a credit in the sum of $2,000.00 upon the next maturing installment of rent. * * *"
Paragraph 5 on page 30 of the transcript provides:
"Prior to termination of the lease between the parties and removal by the Lessee from the premises, the Lessee (who is also the second party hereunder) shall, at its own cost and expense, erect a partition within the demised premises approximately four feet from the existing north wall so as to provide a service doorway entering from Alton Road and continuing through an enclosed passageway to the rear of the existing building. The second party is about to proceed with construction which does not include this passageway, and therefore, the first parties shall be entitled to require the second party to reconstruct and alter the premises to provide said enclosed passageway at or before the termination of the Lease."
The record shows that the cost of improvements involved in this job increased from the original estimate of $30,000 to a final total of $62,894 plus a ten per cent overall cost, most of which, it was testified to, was because of the owner's, appellant's, requirements. The Master's report on page 50 of the transcript states:
"Mr. Brenner insisted that provisions be made too for a direct entrance from the street on the north side of the building; that dressing rooms along the south side should be removable for future stores should the lease terminate; that space should be provided *48 for a dressing room and toilet facilities for the employees, which required the erection of a new building on the rear of the premises, installation of doors, and other items. These matters were not contemplated under the original plans of Ciro Operating Company, its Architect, or G.E. Construction Co.
* * * * * *
"Ample testimony was produced before the Master to the effect that Al Brenner took an active participating interest in the renovation, alterations and additions made to the premises under lease and covered by the agreements referred to, and not only acquiesced in the improvements being placed thereon, in addition to those originally contemplated, but also insisted that the additional improvements and alterations referred to above be installed and erected on the premises in the manner desired by Mr. Brenner. * * *
"* * * The erection of a new building, together with other facilities required by Mr. Al Brenner, and also complications which ensued through discovery of faulty and outworn plumbing and electrical facilities, which had to be corrected in accordance with the City of Miami Beach Code requirements, practically doubled the cost of the job."
The Circuit Court approved the Master's report and required the payment of the liens to the assignee, Charles Smullian.
We are of the opinion that under the amended lease and the testimony produced in the record that the decision of the lower court in construing the original agreement, the new agreement, and other contracts herein, requiring the sub-lessee to complete the contracts was correct.
The appellants in their brief state this question: "Were liens in equity actually paid by general contractors who released to appellants?" In this brief and in the oral argument before this court, the attorney representing the appellants argued that equity will grant no relief to any party who does not come into equity with clean hands and that the final decree should be reversed as the record showed such fraudulent acts of the general contractors acting in connection with and through the appellee, as plaintiff, as to bar any relief to them.
The appellee argued that no pleadings are shown in the case that justify this action, nor is any assignment of error based thereon. The appellant replied that there plaintiff did not come into equity with clean hands, it is not necessary to plead the matter and that the court could deny relief to the plaintiff on its own motion.
It has been held by this court that the doctrine of clean hands need not be pleaded in order to be available where the evidence disclosed its applicability. See State ex rel. Harris v. Gautier, 108 Fla. 390, 146 So. 562, 147 So. 240; Dale v. Jennings, 90 Fla. 234, 107 So. 175.
The Alabama Supreme Court in the case of McInnis v. Sutton, 260 Ala. 432, 70 So.2d 625, held that the court might apply the doctrine sua sponte.
The appellants contend that the record shows that the general contractors themselves bought the claims of the lienors and had them assigned to the plaintiff below, the appellee, who was the father of one of the general contractors; that the purchase of the liens was handled through one of the associates of the firm of attorneys who represented the general contractors; that the general contractors were financially responsible, were primarily liable for the payment in full of all of the liens, had released the appellants from such liens, and had paid all of their debts on all jobs with the exception of the one here involved, and were attempting indirectly to profit on this job at the expense of the lessors who had secured a release of all liens from the said general contractors.
Gerlernter, one of the two contractors, testified that he and his partner owned all of the stock in the G.E. Construction Company; that they owned all of the stock in *49 Atlantic Consolidated Builders Supply, Inc., which latter company employed the appellee, plaintiff below, Charles Smullian, who had allegedly purchased all of the liens involved in this suit. He further testified that the Atlantic Consolidated Builders Supply, Inc., advanced the money with which the appellee purchased the liens foreclosed by the lower court.
Jerome Elson, the other partner, testified that the plaintiff was his father, although having a different name. He further testified that the plaintiff borrowed the money and said further, "He has an open account with us, and we have an open account with him." The lien of the Atlantic Consolidated Builders Supply, Inc., owned by the two partners was assigned to plaintiff without consideration. No money was paid to two of the lienholders for their assignment to the plaintiff because each of them owed money to the Atlantic Consolidated Builders Supply, Inc.
The record shows that a default was entered against the G.E. Construction Company, although they were primarily liable for the liens in question and were solvent. The appellant, in his brief, page 25, stated that an aggregate sum of $5,285.23 was paid for an aggregate of liens of some $23,817.38.
Looking at the record below in the light of the above testimony casts doubt, to say the least, upon the interest of the plaintiff below, appellee here, Charles Smullian, but Smullian himself testified that while some of the money was advanced by a company which he worked for and which was owned by the two partners of the G.E. Construction Company, that it was his money that was paid for the liens, that the same was borrowed by him as he had done before from this company, that if it was not reimbursed by the court holding the owners liable under the liens the loss would fall on him and not on the partners, his employers in the construction firm.
The Master below heard the testimony of the witnesses, and his report in effect held that Smullian was the bona fide purchaser and assignee of the liens in question, which report was confirmed by the lower court. On appeal this court does not decide a case based upon how they would have decided the case had they heard the original testimony, but only whether there was sufficient evidence in the record to justify the lower court's decision.
Therefore, the decision of the lower court is hereby affirmed.
DREW, C.J., and TERRELL and ROBERTS, JJ., concur.