146 So.2d 588 (1962)
Betty M. BENNETT, Appellant,
v.
Lysle A. BENNETT, Appellee.
No. 3081.
District Court of Appeal of Florida. Second District.
November 7, 1962.
*589 Willes & Bittan, Fort Pierce, for appellant.
Sumner & Sumner, Fort Pierce, for appellee.
PER CURIAM.
Betty Bennett Jenkins, plaintiff below in a divorce action, appeals a decree entered for her defendant husband on his counterclaim granting him a divorce and awarding him custody of their minor children.
The plaintiff filed suit for divorce alleging extreme cruelty and habitual indulgence in a violent ungovernable temper. Her prayer also included custody of their two minor children, child support and alimony. By his counterclaim the husband, Lysle A. Bennett, prayed for a divorce on the ground of adultery and sought custody of the children and a division of property. Five witnesses testified for the plaintiff and twelve witnesses testified on behalf of the defendant-counterclaimant. At the conclusion of the trial, the chancellor entered a final decree dismissing the wife's complaint and granting a divorce to the husband. Custody of the children was awarded to the father.
The plaintiff appealed insisting: (1) that the defendant did not prove material allegations that the plaintiff committed adultery; and (2) that the defendant did not adduce sufficient evidence to support a determination that the plaintiff was an unfit mother. Subsequent to the filing of the notice of appeal the plaintiff remarried and filed in this court a motion to abandon the point challenging the validity of the divorce. This motion is granted, and we confine our opinion to the remaining point appealed. First, however, we dispose of the defendant's motion to dismiss the appeal on which motion ruling was deferred pending arguments on the merits. We find this motion without merit and accordingly deny it. See Weatherford v. Weatherford, Fla. 1956, 91 So.2d 179.
The only question we must now consider is whether the chancellor had sufficient evidence before him to support the decree awarding custody of the children to the defendant, bearing in mind that the welfare of the children is the prime consideration. Smith v. Bollinger, Fla.App. 1962, 137 So.2d 881, 886.
The decision of the chancellor carries with it the presumption of correctness on appellate review where, as here, the evidence *590 and the witnesses were before him. Joyner v. Andrews, Fla.App. 1962, 137 So.2d 870, 872. It is incumbent upon the appellant to demonstrate that the decree appealed was clearly erroneous. Cowen v. Cowen, Fla. 1957, 95 So.2d 584; Tyler v. Tyler, Fla. App. 1959, 108 So.2d 312; Cole v. Cole, Fla. App. 1961, 130 So.2d 126. If the record contains substantial evidence to support the chancellor's decree, we must uphold it even though we might have decided differently had we been in the chancellor's position. Bruggisser v. Bruggisser, Fla.App. 1961, 133 So.2d 654; Brenner v. Smullian, Fla. 1956, 84 So.2d 44, 49.
The defendant-counterclaimant testified that he had seen his wife out with one Charles A. Jenkins several times at night, that he had seen them hugging and kissing in front of her house and in front of Jenkins' sister's house, that she went into the house first and Jenkins entered a few minutes later and that the house was dark. He further stated that his wife would go out "pretty near seven nights a week for the last two years * * *" coming home anywhere from 12:00 to 3:00 or 4:00 o'clock in the morning. He stated that after they separated he went to visit the children many times when the baby sitter would come. He testified that the authorities once took her child by a former marriage away from her and placed him in a foster home in New York and that he had helped get him out.
The defendant stated that his wife had sometimes gone out on a Friday and that he wouldn't see her again until Monday night, that she would not tell him where she went and that he would take care of the children and get a baby sitter when he went to work. He said that after they separated the plaintiff had a nice home, but the sleeping facilities were crowded and that he, the father, could provide a home where the children could have their own bedrooms.
It is unnecessary to detail the considerable evidence upon which the defendant-counterclaimant depended and which the chancellor found sufficient to establish the counterclaim. We would, therefore, limit our comment to the following pertinent testimony. One Susie Potter testified that Betty Bennett told her about going out with other men and that she went out with one "Max" over a period of two years. She related that the plaintiff told her "Max" stayed at her house while her husband went to his mother's funeral, and that they had gone to Georgia on week ends. This witness further testified that the plaintiff had told her she was going out with other named men.
One Mrs. John R. Limback testified that the plaintiff told her she had been dating Homer Vanater and that he had given her a dress for Christmas. She further testified that the plaintiff told her that she had been dating a man named Chris.
One Harry Anderson testified that he lived next door to the plaintiff for two years and that he didn't think she was a fit person to have custody of the children. He stated that he had seen the plaintiff leaving the house in a car alone at night quite often, and that Michael, her son, really raised the two children:
"* * * He took care of them. Fed them and washed them and everything. She has an extra bedroom built on her house and that is where she stayed.
"Q. She would sleep all the time, at day time?
"A. Yes, sir.
"Q. And be gone at nights?
"A. Yes, sir."
Numerous other witnesses testified that although they didn't see who was driving, they heard the plaintiff's car come and go late at night.
Although several witnesses stated that the children never seemed to be uncared for, one Mrs. Rodney Spencer testified that the children used to come over every morning about seven o'clock and ask for fruit or ask to use her bathroom because their mother *591 was asleep and wouldn't let them in the house. Similar testimony was given by one Mrs. Jean Kendall, another neighbor.
The plaintiff first testified that it was through the defendant-counterclaimant that her child by a former marriage was removed from her custody. Later on recall, the plaintiff admitted that it was because of her alcoholism that the boy was placed in a foster home, but she stated that she was treated in a New York hospital for two months and had abstained from alcohol since she was released. She denied all other accusations as did corespondent Homer Vanater.
Although there was some testimony that the children were well dressed and these witnesses thought the plaintiff was a fit parent to have care and custody of the two minor children, there is more than sufficient evidence to support the chancellor's decree.
Adultery or marital misconduct in and of itself does not necessarily demonstrate that a parent is unfit to have custody of the children. Cf. 10 Fla.Jur., Divorce, etc., § 256. However the chancellor here had before him abundant testimony, together with pictorial and documentary evidence, from which to arrive at his conclusion. That conclusion will not be disturbed. See Cole v. Cole, Fla.App. 1961, 130 So.2d 126. Where there is a history or continued pattern of parental irresponsibility on the part of the mother, the chancellor may be justified in awarding custody of the minor children to their father. As stated previously, the welfare of the children is the prime consideration.
The plaintiff has two additional motions before this court. She asks that we spell out her visitation rights or, in the alternative, direct the chancellor to determine such rights. She filed her original petition in the circuit court for St. Lucie County, Florida, subsequent to filing her notice of appeal. That court entered an order stating that it was without jurisdiction to hear the petition at that time. Such matters require careful and firsthand scrutiny at the trial level. The alternative motion is granted and the request for determination of the plaintiff's visitation rights and privileges is referred to the circuit court for St. Lucie County, Florida.
The plaintiff's motion for attorney fees and costs on appeal is denied.
Affirmed.
SHANNON, C.J., and ALLEN and WHITE, JJ., concur.