### SCHILLER v. SCHILLER.
No. 69C-2620.
Juvenile and Domestic Relations Court, Palm Beach County.
August 11, 1971.

James R. Watt, Palm Beach, for the plaintiff father.

J. Ralph Mabie, West Palm Beach, for the defendant mother.

LEWIS KAPNER, Judge.

This cause was presented upon a motion for change of custody filed by the plaintiff (father), and a motion for arrearage, increase in support, and attorney fees filed by the defendant (mother).

The parties were married in 1960 and have had three children, Kelly Kyle, age 10, Richard, age 9, and James, age 7, who are the subjects of this case.

In the early part of 1969, while these parties were still married, the defendant began dating Eddie Condon, a married man who had been friendly with both plaintiff and defendant. Mr. and Mrs. Schiller entered into a separation agreement on July 23, 1969 providing, inter alia, that the defendant was to pay $15 per week in child support. On that same date, they entered into a separate agreement whereby she waived any claim to child support. From the evidence it appears that this agreement rested upon the assumption that Eddie Condon would assume the financial obligation of supporting these children. The final judgment, entered October 6, 1969, incorporated the original agreement providing for support at $15 per week but did not incorporate the separate agreement waiving child support.

Mr. Condon was and is married to another woman. He and the defendant were living together off and on prior to and after the defendant's divorce and continuously since February, 1970. Mr. Condon has been desirous of obtaining a divorce from his wife but has been unable to do so. He testified that he now intends to file for divorce under the new no-fault divorce law and it is likely he will become divorced in the near future and will marry the defendant.

Plaintiff testified that at the time of their separation and divorce he was working long hours at Pratt-Whitney, had no family in this area, and was in no position to take custody of the children. When the defendant and Mr. Condon began to live together in February, 1970 he began to think about the possibility of obtaining custody. When the plaintiff married in June, 1970 he conferred with counsel toward this end but was advised he had little chance since the defendant and Mr. Condon had just moved to Puerto Rico where they remained until December, 1970.

The plaintiff testified as to an incident in February or March, 1971, when the children were left at school without being picked up. This was due to the fact that Mr. Condon, who was supposed to pick them up, got involved at his business and forgot to pick them up. Around that same time Mr. Schiller became aware of Kelly's unhappiness in the defendant's home. The plaintiff filed for custody on March 22, 1971.

The children appear to be well-adjusted and cared for. Other than the incident just described, an apparently isolated one, nothing was shown, either in testimony or in the custody investigation which would establish a pattern of parental neglect.

The custody investigation discloses that Kelly Schiller, age 10, the oldest child, was "quite emphatic in stating that she definitely wanted to live with her father and step-mother." She says she can communicate better with her step-mother and she also resents the discipline she receives from Mr. Condon. It was suggested that Mr. Condon's discipline was too strict but there is nothing in the record to show that the discipline is improper or detrimental to the welfare of the children.

The final judgment in a divorce case is res judicata as to child custody and may be modified only upon a showing of a substantial change in circumstances and then only when the best interests of the children are served. 10 Fla. Jur., *Divorce*, §262. Frye v. Frye, 205 So.2d 310. R    rriage of one or both of the parents, in and of itself, ordinarily will not authorize a change of custody. A change of custody because of improvement in the petitioner's circumstances is justified only when coupled thereto are circumstances relating to the present custody which are improper and harmful to the children so as to make it manifest that a change of custody is essential for their welfare. 10 Fla. Jur., *Divorce*, §264. Ritsi v. Ritsi, 160 So.2d 159.

Plaintiff cites Bennett v. Bennett, 146 So.2d 588, as to the significance of a mother living with a man she is not married to. That case held that while adultery or marital misconduct in and of itself is not sufficient to hold a parent unfit, a "history or continual pattern of parental irresponsibility" will justify a trial judge in so holding.

There are many reasons why such an arrangement is unwise and detrimental to the welfare of the children. Society condemns it, thus imposing an additional burden for the children to contend with in life. The relationship is usually unstable and temporary. Children often resent it and are often chided by their classmates. It sets a poor moral example for the children, particularly when children reach their teens and desire to act as adults. Yet, with all this, it cannot be said that such a relationship is, by itself, sufficient to declare a parent unfit. The court must look at the over-all picture.

In the present case many factors tend to offset the impropriety of this relationship. From the beginning, they would have gotten married but for Mr. Condon's inability to obtain a divorce. They have demonstrated they do not treat their relationship lightly by living together continuously now for nearly 18 months, part of which time was under very trying circumstances in Puerto Rico.

These factors, of course, do not condone or excuse the original marital misconduct in 1969 but that would not have been sufficient

by itself even then to rule the mother unfit. Even their intention to live with each other and their actual assumption of cohabitation would not, by itself, compel the trial judge to declare the parent unfit but, even if it were, a time must come when the issue of impropriety can no longer be raised. The defendant and Mr. Condon have lived together as man and wife now since February, 1970, and it appears they will soon be legally married. Their relationship, from all apearances, has been healthy and stable and the defect of illegality is expected to be corrected. It would be unfair to them and to the children to condemn them forever for the impropriety of two years ago. Upon consideration of these facts, the court finds that there has been no change of circumstances in the relationship of the defendant and Mr. Condon and that this relationship is not such as would warrant a change of custody.

As to the desires of the children, Kelly has expressed a desire to live with her father and step-mother. While the wishes of children are entitled to special consideration where the child is old enough to form an intelligent opinion, they are not controlling. This is particularly true where the issue involves a change of custody rather than an original placement. The court is of the opinion that Kelly is old enough to form an intelligent opinion but her desires at this point would not authorize a change of custody for these children. Further, her feelings seem to stem in large measure from her concern over the fact that her mother and Mr. Condon are not legally married and since this should be changed in the near future her feelings may change also.

Upon consideration of all the evidence herein it is thereupon ordered that the motion for custody is denied.

As to the defendant's motion for arrearage and increase in support, the court finds, upon the evidence, that the defendant is current with his support at this time. No evidence was actually offered regarding the question of support inasmuch as the hearing was concerned primarily with the more important question of custody. It is thereupon ordered that the plaintiff's support obligation shall continue as it has, without prejudice to either party to apply for modification.

The defendant is entitled to attorney fees on her motion and also to defend the plaintiff's motion but the court feels that the plaintiff should not be required to bear the entire expense. It is thereupon ordered that the plaintiff shall pay the sum of $100 for attorney fees in connection with this hearing. This sum shall be paid to Ralph Mabie, Esquire.

Jurisdiction is retained for the purpose of entering such further orders as to the court may seem necessary.