262 So.2d 20 (1972)
MARITIME CONSTRUCTION COMPANY, Inc., an Illinois Corporation, Appellant,
v.
Charles J. BENDA, Jr., Appellee.
No. P-89.
District Court of Appeal of Florida, First District.
May 16, 1972.
Carl R. Pennington, Jr., and Ben H. Wilkinson, of Pennington & Wilkinson, Tallahassee, for appellant.
Stewart E. Parsons, of Parsons, Hayes & Parsons, Tallahassee, for appellee.
RAWLS, Judge.
Appellant, Maritime Construction Company, Inc., seeks review of a jury verdict in favor of appellee, Benda, an architect. The principal point on appeal is whether the evidence adduced at the trial is insufficient as a matter of law to establish that Benda performed his architectural duties pursuant to his contractual arrangement *21 with Maritime or was obstructed by Maritime from performing.
In February of 1968 Maritime acquired an option on an apartment site in Tallahassee, Florida. In February the Tallahassee Zoning Code required one on-the-premise parking space per apartment. By June, when Maritime exercised its option and purchased the land, the Zoning Code had been updated to require one and a half on-the-premise parking spaces per apartment unit. At all times the Rules and Regulations of the Florida Hotel and Restaurant Commission required that the prime architect of this type development be licensed in the State of Florida.
Maritime's intention was to develop an 80-plus unit garden apartment complex on its newly acquired land, and the first step was to retain a Mr. Newman of Chicago as primary architect. Mr. Newman soon became aware that his plans for the apartment complex would not be approved by the Florida Hotel and Restaurant Commission unless a Florida architect was associated with the project. At this stage, Benda makes his first appearance. Mr. Newman associated Benda as the consulting architect in hopes that the Florida Hotel and Restaurant Commission would issue its stamp of approval on the plans. Instead, the plans were rejected as the Rules and Regulations of the Hotel and Restaurant Commission required the prime architect to be licensed in the State of Florida. This rejection prompted Newman and Benda to enter into an agreement whereby Newman would pay Benda $2,000 if Benda provided the necessary services to secure the required approval of the plans by the Hotel and Restaurant Commission. Benda resubmitted the plans to the Hotel and Restaurant Commission with himself listed as prime architect and they were approved.
Having overcome the hurdle of the Hotel and Restaurant Commission, Maritime turned its attention to meeting the requirements of the various ordinances of the City of Tallahassee. Maritime soon learned that the Tallahassee Zoning Code required one and a half (approximately) parking spaces per apartment unit and not one space as was provided in its drawings for the site plan. During the closing months of 1968 and January of 1969 Maritime tried, but to no avail, to obtain a variance or a ruling that it was exempt from the increased parking-space requirement (from one to one and a half) of the Zoning Ordinance.
By February of 1969, the task of situating approximately 80 apartments and 120 parking spaces on Maritime's tract of land was appearing to be insurmountable. About this time a dispute arose between Maritime, Benda and Newman as to who was responsible for paying for Benda's services. The insolvable parking problem and the dispute led to a meeting in Tallahassee on February 27, 1969 between Maritime, Benda, their respective attorneys, and Newman (by phone). From this meeting arose the contract which is the subject of this litigation.
The parties acknowledged in this new contractual arrangement that Benda had been retained by Newman to perform certain services which Newman was obligated contractually to render to Maritime, and that the parties were now in disagreement both as to the value of Benda's services and as to who was responsible for payment of these services. The parties then arrived at the following contractual arrangement:
"7. The party of the third part [Benda] agrees that he will make such modification in the plans, if any (upon prior approval of such changes by the party of the first part [Maritime]) as are required by the City of Tallahassee as a prerequisite to the issuance of a building permit for the improvements described in said plans. Payment for such services is included in the Four Thousand and No/100 ($4,000.00) Dollars to be paid to the party of the third part [Benda] under the terms hereof (said Four Thousand and No/100 ($4,000.00) Dollars being the same described in Paragraph Two and Three hereof.) The party of *22 the first part [Maritime] agrees that said Four Thousand and No/100 ($4,000.00) Dollars shall be paid forthwith upon the issuance of said City of Tallahassee building permit and submission of necessary waivers and affidavits."
During the next several weeks Benda proceeded to revise the site plan to bring it into conformity with the City of Tallahassee Zoning Code. Benda drew in the plan the required number of parking spaces, but at that point his attempts to provide a workable site plan which would be in conformity with the Zoning Code ended. Many, if not all, of the new parking spaces were not of regulation size and were so small they could not be used by a standard-sized American car. Automobile maneuvering space was almost nonexistent and part of what maneuvering space which did exist involved use of a City right of way.
Benda's revised site plan was approved by the City of Tallahassee plan checker, but was rejected by Maritime as totally unworkable. In rejecting the plan, Maritime made no suggestion to Benda as to how he might remedy the defects. A building permit was never issued for the project. Benda offered no further revisions, and Maritime refused to pay Benda. Hence, this litigation with Benda suing Maritime for his architectural services.
Benda has at all times rested his case against Maritime on the February 27, 1969 contract. He chose not to pursue the legal remedy of quantum meruit. By building his case on the February 27 contract, Benda had to show that he had performed all of the conditions precedent to his right to receive the $4,000 fee, or in the alternate that Maritime had obstructed his performance.[1] Appellee Benda acknowledged during the trial that the revised site plan was unworkable and at no time was any evidence presented to the accord that the revised site plan would meet the Zoning Ordinances of Tallahassee. Benda, in essence, admitted that he had failed to perform the condition precedent to his entitlement to a fee.
Benda argued at trial, and again in this Court, that he was obstructed by Maritime in performing this obligation when Maritime made no suggestion to him on how to revise the plan. We find this contention totally unacceptable. Arranging site plans and drawing buildings so that they conform to local ordinances and building codes are expertises within the field of architecture. A person, such as Benda, who is licensed as an architect holds himself out as possessed of this expertise. We know of no legal concept which requires a layman to suggest to an architect that he has employed how such architect should perform his professional services.[2] Had Maritime known how to revise the site plan to meet the Zoning Code, it would not have needed the services of Mr. Benda.
Benda also contends that the reason the condition precedent of the issuance of a building permit was not fulfilled was that Maritime failed to apply for one. On the strength of an obviously unworkable and illegal site plan, we find no obligation for Maritime to go forward and apply for the building permit.
At the close of Benda's case Maritime moved for a directed verdict, which the trial judge denied allowing the case to go to the jury. The jury verdict in favor of Benda comes to us clothed with a presumption of correctness and will be reversed only if, as a matter of law, the evidence is insufficient to support the verdict.[3]
*23 There was never any evidence placed before the jury that Benda's revised site plan was workable. Instead, all of the testimony shows that the plan was totally unusable and in gross violation of numerous ordinances of the City of Tallahassee. In light of these uncontroverted facts, the trial judge erred in failing to direct a verdict for Maritime, and we are compelled to reverse the jury award.
Reversed with directions to enter a verdict for appellant, Maritime Construction Company, Inc.
SPECTOR, C.J., and CARROLL, DONALD K., J., concur.
NOTES
[1] Thomson v. Kyle, 39 Fla. 582, 23 So. 12 (1897); and Knowles v. Henderson, 156 Fla. 31, 22 So.2d 384 (1945).
[2] Bebb v. Jordon, 111 Wash. 73, 189 P. 553 (1920).
[3] Brenner v. Smullian, 84 So.2d 44 (Fla. 1955); and C. & H. Contractors, Inc. v. McKee, 177 So.2d 851 (Fla.App. 1965).