REDMANN, Judge.
When defendant claimed a large credit against plaintiffs’ bill for architectural services, plaintiffs not only disputed the credit but countered with a supplemental bill including “extras” that plaintiffs had intended to absorb. Then, when plaintiffs sued, defendant reconvened for the increase in the low bid price of the contract to build over an earlier low bid which was lost because zoning problems then prevented immediate building. By now the initial dispute has been resolved in defendant’s favor, and defendant alone appeals from the trial court’s award of the extras and dismissal of the reconventional demand. We affirm.

The Reconvention

The basic foundation of the reconventional demand is the architects’ failure to design a building which the zoning law would allow to be built (with the difference here that defendant seeks to charge the architects with the duty of procuring zoning law changes). Defendant makes a compelling analogy to the cases that deny compensation to an architect whose plans irremediably exceed the project’s budgetary limit, such as MacDonnell v. Dreyfous, 1919, 144 La. 891, 81 So. 383 (but see Moossy v. Huckabay Hospital Inc., La.1973, 283 So.2d 699, holding parol inadmissible to show that a limit was intended).
The common factor in cases of buildings not buildable because of excess costs and buildings not buildable because of zoning noncompliance is the worthlessness of the architect’s plans for the intended pur *1206 pose. If the owner cannot use the plans because of some factor which the architect knew or should have known (though perhaps only if declared in the contract, see Moossy, supra), the owner should not have to pay for the unusable plans. See Bebb v. Jordan, 1920, 111 Wash. 73, 189 P. 553, 9 A.L.R. 1035.
We conclude, however, that the valid point defendant makes does not extend to our problem, which is more complicated than non-compliance with zoning (and more complicated than simple liability for the architect’s fee). If our library buildings were re-designed to meet the original single-family and low-density residential zoning, it could not be a library (and it surely would not be the building that defendant wanted). One must conclude that defendant did not want a building that would comply with the existing zoning regulations.
The basic question, then, is whether it was the architects’ duty to change the zoning law. The only pertinent contractual obligation of the architects is “filing the required documents to secure approval of governmental authorities having jurisdiction over the design of the project.” That language does not oblige the architects to secure an amendment to the zoning ordinance. Moreover, there is no showing that, by promptly moving after the defendant owner delivered a “survey . . . giving . zoning ... of the building site” (as the contract required), the political accomplishment of amending the zoning ordinance could have been achieved in time for the earlier bidding. Finally, there is evidence of some changes in specifications to meet later federal grant requirements which plaintiff architect testified increased the cost.

The Extras

Although defendant disputes the propriety of some of the extras (especially some which pre-date the design contract), they are all shown to be reimbursable under the design contract (including the pre-dated ones, incurred when plaintiffs anticipated the design contract).
Defendant urges, however, that all of the extras were remitted by plaintiffs’ unilateral decision not to charge for them when submitting their “final bill”. But that final bill did not allow credit for defendant’s payment under a prior “master plan” contract which, as plaintiffs knew, was interpretable as obliging the credit (although plaintiffs had a contrary interpretation). We find no evidence of an intended remission under the circumstances, although there is evident merit in defendant’s argument that once remission is made, the beneficiary’s consent to the remission is presumed by law and the remission cannot be revoked. We view plaintiffs’ action in billing, without charging extras but without allowing credit, as in the nature of an offer of compromise, and we conclude that no remission was intended or occurred.
Affirmed.