**GREENHAVEN CORPORATION, an Indiana Corporation, Walter L. Green, William A. Mann, Joseph Goldsmith Construction, Inc., Muncie Federal Savings & Loan Association, Lawrence Walsh, Treasurer of Delaware County, and Jack Donati, Auditor of Delaware County, Appellants (Defendants Below),**

v.

**HUTCHCRAFT & ASSOCIATES, INC., Appellee (Plaintiff Below).**

No. 2–982A300.

Court of Appeals of Indiana, Second District.

May 3, 1984.

J. David Haynes, Muncie, for appellants.

Darrel K. Peckinpaugh, Muncie, for appellee.

SHIELDS, Judge.

Greenhaven Corporation (Greenhaven) appeals from an adverse judgment in favor of Hutchcraft & Associates, Inc. (Hutchcraft). The trial court awarded Hutchcraft $4,000 in its action on account for services and denied Greenhaven's counterclaim for negligent preparation of architectural plans.

We remand with instructions to the trial court to reduce the amount of the judgment after which the judgment, as reduced, is affirmed.

In August 1978, Hutchcraft, a professional architectural corporation, entered into an oral contract with Greenhaven to provide plans for renovating Walnut Corners, a building owned by Greenhaven. Hutchcraft submitted to Joseph Goldsmith (Goldsmith) Greenhaven's representative and general contractor on the project, preliminary plans calling for two exits from the top floor of the building. Goldsmith requested the plans be altered to provide only one exit from the top floor.

With knowledge the Office of the State Fire Marshall (Fire Marshall) might not approve the plans, as modified, Goldsmith began construction on Walnut Corners. In June 1979, Greenhaven notified Hutchcraft it had stopped the project and no longer needed Hutchcraft's services. At that time Hutchcraft had completed 95–97% of the work it had agreed to perform. Thereafter, Greenhaven refused to pay Hutchcraft the unpaid balance ($4,000) of the invoiced amount of $9,000 which Hutchcraft claimed it was owed. Hutchcraft filed a Notice of Intent to Hold Mechanic's Lien, and subsequently filed this action. The Fire Marshall has yet to approve the building for occupancy.

■ Greenhaven argues the trial court's judgment is contrary to law and contrary to the evidence. We disagree. On review, we will not set aside a judgment where the trial court has made findings of fact and conclusions of law unless it is clearly erroneous. *Husted v. Gwin,* (1983) Ind.App., 446 N.E.2d 1361.

The question of an architect's duty to prepare plans and specifications conforming to applicable building codes and ordinances appears to be one of first impression in Indiana. However, we find the following principles instructive.

■ There is implied in every contract between an architect and his employer an agreement that plans and specifications prepared by the architect will be suitable for the purpose for which they are prepared. *Nave v. McGrane,* (1910) 19 Idaho 111, 113 P. 82. This implied agreement includes the architect's duty to draw plans and specifications that conform to building codes, zoning codes and other local ordinances. *Krestow v. Wooster,* (1978) Fla.App., 360 So.2d 32. However, it is also generally held that an architect's duties to his employer depend upon the agreement he has entered into with that employer. *Cobb v. Thomas,* (1978) Tex.Civ.App., 565 S.W.2d 281; *Mississippi Meadows, Inc., v. Hodson,* (1973) 13 Ill.App.3d 24, 299 N.E.2d 359. Thus, if an architect and his employer agree that plans be prepared so as not to conform to applicable codes and ordinances,[1] the architect no longer has a duty to provide conforming plans. The rule is generally stated:

"Where an architect is employed generally to draw the plans and specifications for a building of a given style and dimensions, he may recover for his services upon a compliance with the terms of his employment even though the building planned is one which the employer cannot erect at the place at which it was his purpose to erect it, but if the architect knows the place where it is intended to erect the building he must know the building restrictions of that particular place and must draw the plans and specifications accordingly or else forfeit his right of recovery for his services. So, the architect cannot revover for his plans and specifications where the building, if erected in accordance with them, would violate the building ordinances of the place at which it is to be erected *unless he has been directed by the owner to so prepare them."*

6 C.J.S. *Architects* § 31 (1975) (emphasis added). *See Nave v. McGrane,* (1910) 19 Idaho 111, 113 P. 82; *Bott v. Moser,* (1940) 175 Va. 11, 7 S.E.2d 217; *Bebb v. Jordan,* (1920) 111 Wash. 73, 189 P. 553.

■ The trial court found:

"2. That plaintiff submitted drawings and that a representative of Greenhaven, namely Mr. Goldsmith, having observed said drawings, requested that alterations be made designing a building not requiring a second exit from the top floor; that said request was complied with and a second set or final plans were submitted to Mr. Goldsmith."

There is evidence in the record to support the trial court's finding Hutchcraft's original plans conformed to the Fire Marshall's Code, *i.e.,* the plans called for two remote exits from the top floor, and that Gold-

---

1. Indiana has long adhered to the rule that contracting parties may enter into any agreement they desire so long as it is not illegal or contrary to public policy. *See, e.g., Center Township of Porter County v. City of Valparaiso,* (1981) Ind.App., 420 N.E.2d 1272; *University Casework Systems, Inc. v. Bahre,* (1977) 172 Ind. App. 624, 362 N.E.2d 155.

The parties have not made, nor do we conceive, an argument that the agreement between Hutchcraft and Greenhaven to provide nonconforming plans is contrary to public policy. We cannot see the public was harmed by the agree-

ment. Before Walnut Corners could be occupied, the Fire Marshall had to approve the building for occupancy; that is, the Fire Marshall had to find the building safe for public use. Thus, if the plans for the building did not meet the Fire Marshall's requirements, the parties either had to obtain a variance or change the plans to conform to the requirements. In either case, the public was protected, regardless of the agreement between Hutchcraft and Greenhaven.

Furthermore, nonconforming plans are encouraged by the availability of, for example, variance procedures.

smith requested the plans be changed to provide only one exit. Therefore, Hutchcraft did not have a duty to draw plans conforming to the Fire Marshall's Code because it modified the plans at Goldsmith's request and direction.

■ However, although Hutchcraft did not have a duty to provide conforming plans, it was bound to perform with reasonable care the duties for which it contracted, *Seiler v. Levitz Furniture Co.*, (1976) Del., 367 A.2d 999, and is liable for failing to exercise professional skill and reasonable care in preparing plans and specifications according to its contract. *Smith v. Goff,* (1958) Okl., 325 P.2d 1061. *See generally,* 6 C.J.S. *Architects* § 27. *Cf. Lukowski v. Vecta Educational Corp.*, (1980) Ind.App., 401 N.E.2d 781 (if architect owed duty to prepare plans and specifications with degree of competence ordinarily exercised in like circumstances by reputable members of the profession, then evidence was insufficient to support finding of breach).

■ On this issue the trial court found:

"3. That Mr. Goldsmith, being a representative of Greenhaven and being a contractor and knowledgeable in the construction of buildings and in the requirements of the codes of the State of Indiana, did endeavor to commence construction of said building, full well and knowing that said plans were not in conformity with the code and that thereafter the plaintiff acted in due course as an architect, working with the defendant, Greenhaven, and the other defendants, in attempting to secure variances and that at some point the defendant notified plaintiff that the project was to be aborted and that thereafter the plaintiff rendered no further service until June."

There is evidence in the record Hutchcraft used reasonable care and professional skill in preparing the plans and in attempting to perform its obligations under the contract.

Hutchcraft advised Goldsmith when it submitted the original plans of the need for a second exit from the top floor. Record at 446. After Goldsmith requested the plans' modification, Hutchcraft attempted to secure approval of the plans and/or obtain a variance from the Fire Marshall until Greenhaven notified it the project was not going forward. Hutchcraft kept Goldsmith apprised of its communications with the Fire Marshall and of the Fire Marshall's insistence on two remote exits. Record at 241–247. Thus, the trial court's judgment was not clearly erroneous as to Hutchcraft's using reasonable care in performing its contractual duty and, consequently, in denying Greenhaven damages on its counterclaim.[2]

■ We hold, however, the trial court's award of $4,000 to Hutchcraft was excessive. Hutchcraft's July 31, 1980, statement for services reflected a balance due from Greenhaven of $4,000. This figure was based upon 100% completion of Hutchcraft's work and was computed as follows:

"Percentage of work completed        100%
Contract amount of $9,000.00   x  100%     9,000.00
Less Previous Payments                                5,000.00

Total due this statement                              $4,000.00"

Record at 561. The parties agree Hutchcraft had performed only 95–97% of its work when Greenhaven notified it the project was cancelled. Hutchcraft argues, however, it is entitled to the full invoice amount under the doctrine of substantial performance. We disagree because the doctrine of substantial performance does not apply in an action on account. Hutchcraft cannot be paid for services it never performed. Accordingly, pursuant to Ind. Rules of Procedure, Appellate Rule 15(N)(5), we remand this cause to the trial court with instructions to reduce the judgment to $3,550[3] after which the judgment is affirmed.

---

2. The parties' conduct was such that the trial court judgment against Greenhaven may well be defensible on the theory that Greenhaven was estopped to raise the issue of the plan's nonconformity because it specifically requested the nonconforming modification.

3. In light of the insignificant variance between an award reflecting 95% completion and one for 97%, it is in the best interest of the parties and judicial economy to base Hutchcraft's recovery on the 95% completion.

BUCHANAN, C.J., concurs.

SULLIVAN, J., concurs.