STRAUSS VEAL FEEDS, INC.; Strauss Veal, Inc.; and Provimi, Inc., Plaintiffs–Appellants

v.

MEAD AND HUNT, INC.; and Donald B. Johnson, Individually and as Vice President of Mead and Hunt, Inc., Defendants–Appellees.

No. 43A03–8809–CV–285.

Court of Appeals of Indiana, Third District.

May 30, 1989.

Rehearing Denied Aug. 8, 1989.

Courtney B. Justice, Robert L. Justice, Logansport, for plaintiffs-appellants.

Arthur G. Surguine, Jr., Carla J. Baird, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for defendants-appellees.

HOFFMAN, Judge.

Plaintiffs-appellants Strauss Veal Feeds, Inc., Strauss Veal, Inc. and Provimi, Inc. (hereinafter referred to as "Strauss") appeal from a trial court decision in favor of defendant-appellee Mead and Hunt, Inc. (hereinafter referred to as "M & H") in a suit for breach of contract and negligence. The facts relevant to this appeal are summarized below.

M & H is an architectural and engineering firm which specializes in designs for the dairy industry. In February of 1984, M & H learned of a proposed veal feed processing facility to be constructed in North Manchester, Indiana. The project, developed by Strauss, was to involve the production of liquid·veal feed from whey, fats, emulsifiers and other ingredients for shipment directly to farmers.

M & H submitted a proposal to Strauss, offering to provide the following services: site work; drawings and specifications for the building and foundation; plant mechanical work, including boilers, heating, ventilation, air conditioning, steam, compressed air, water, plumbing and waste water drains; electrical work; coordination and cooperation with equipment suppliers to hook up equipment to utilities; and consultation upon request. Upon acceptance of the proposal by Strauss, that document became the contract between the parties.

Strauss's veal feed processing facility was completed and put into operation in April of 1985. Shortly thereafter, the Indiana Stream Pollution Control Board issued a cease and desist order, because the industrial waste produced by the plant had an excessive biochemical oxygen demand level. In compliance with the cease and desist order, Strauss shut its plant down and explored remedial measures to lower the biochemical oxygen demand level of its waste.

Strauss commenced the instant action, bringing breach of contract and negligence claims against M & H. Strauss maintained that M & H breached its contract when it failed to warn Strauss about possible industrial waste disposal problems associated with the production of liquid veal feed.

Strauss also alleged that M & H breached its tort duty of due care when it did not independently investigate and warn Strauss about potential industrial waste problems. The trial court found that M & H had no duty to perform sanitary engineering for Strauss under the terms of the contract, and that M & H did not negligently discharge the duties which it had undertaken. Accordingly, Strauss was not permitted to recover under contractual or tort theories.

Two issues are dispositive of this appeal:
(1) whether the trial court's conclusion that M & H did not breach the terms of its contract with Strauss is contrary to law; and .
(2) whether the trial court's conclusion that M & H did not negligently discharge its duties is contrary to law.

■ Addressing Strauss's claim of breach of contract, the trial court found that the agreement between the parties was ambiguous as to the responsibilities of M & H. Namely, reference to sanitary engineering was omitted from the contract. The parties do not dispute that the proposal submitted by M & H and accepted by Strauss failed to set out all of the details agreed upon. Thus the lower court properly considered extrinsic evidence to determine the scope of M & H's contractual obligations. *See Malo v. Gilman* (1978), 177 Ind.App. 365, 368–369, 379 N.E.2d 554, 557.

The evidence before the trial court established that Strauss did not specifically ask for consulting or design services from M & H with respect to waste treatment or waste disposal. M & H was not given any information concerning the amount, quantity or quality of waste water effluent which would be emitted from the process equipment in Strauss's proposed plant. When M & H questioned Strauss regarding its ability to meet the requirements which might be imposed by the Town of North Manchester Wastewater Treatment Plant, Strauss

indicated that its operation would be a "clean" one and that direct discharge of effluent into the sewage system of North Manchester would create no problem. Based upon such extrinsic evidence, the trial court concluded that M & H had no duty under the contract to provide sanitary engineering services for Strauss.

Strauss argues that the trial court's conclusion is erroneous, because it represents a construction of the written agreement in favor of the drafter. Normally, a contract is construed most strongly against the drafting party. *Potts v. Offutt* (1985), Ind. App., 481 N.E.2d 429, 432. However, the purpose of the rules of contract construction is to give effect to the parties' reasonable expectations. *R.R. Donnelley & Sons v. Henry–Williams, Inc.* (1981), Ind.App., 422 N.E.2d 353, 356. The intent of the parties is the controlling factor in determining what their agreement actually was. *Peoples Fed. Sav. & Loan Ass'n v. Willsey* (1984), Ind.App., 466 N.E.2d 470, 472.

■ In the case at bar, the trial court heard evidence that Strauss did not request engineering services from M & H with respect to industrial waste treatment or disposal. According to M & H, it was responsible only for the design of a sanitary sewer system connecting Strauss's facility with the city sewer. The trial court construed the agreement between M & H and Strauss in such a way as to effectuate the intent of the parties. Therefore, the court's construction may not be deemed erroneous.

Strauss next contends that the lower court erred because it did not recognize an implied agreement that the plans furnished by M & H must be suitable for the purpose for which they were prepared.[1] Strauss asserts that M & H breached that implied agreement, and consequently breached its contract.

The theory that an architect impliedly agrees to furnish plans suitable for the

---

**1.** Strauss also argues that M & H breached an implied warranty of workmanlike performance. Whether M & H met the requisite standard of care for architects when performing its obligations under the contract will be addressed by this Court in its discussion of the second appellate issue raised by Strauss, pertaining to negligence.

purpose for which they were prepared was articulated in *Greenhaven Corp. v. Hutchcraft & Associates* (1984), Ind.App., 463 N.E.2d 283. This Court announced:

"There is implied in every contract between an architect and his employer an agreement that plans and specifications prepared by the architect will be suitable for the purpose for which they are prepared. This implied agreement includes the architect's duty to draw plans and specifications that conform to building codes, zoning codes and other local ordinances." [Citations omitted.]

*Id.* at 285.

Strauss views the cease and desist order from the Indiana Stream Pollution Control Board as evidence that M & H breached its implied agreement to furnish suitable plans.

M & H was retained by Strauss to design a plant suitable for the processing of liquid veal feed. The process contemplated by Strauss represented a new trend in the veal feed industry and was treated as a trade secret by Strauss. Strauss indicated that its operation would be a "clean" one and that any waste could be discharged directly into the sewage system of North Manchester. Yet when it was placed in operation, the facility was found to be in violation of the Environmental Management Act, IND. CODE § 13–7–1–1 *et seq.* (1988 Ed.); the Indiana Stream Pollution Control Law, IND. CODE § 13–1–3–1 *et seq.* (1988 Ed.); and rules implementing those statutes, 330.1 I.A.C. 6–13–1 *et seq.* (repealed September 24, 1987). The violations cited by the Indiana Stream Pollution Control Board were attributed to the process conducted by Strauss which resulted in industrial waste with an excessive biochemical oxygen demand level.

■ The violations of state environmental laws caused by Strauss's innovative process did not constitute a breach of M & H's implied agreement to design a suitable processing facility. It is undisputed that the plant was designed in compliance with applicable building and zoning codes. Moreover, M & H designed a facility suitable for the processing of liquid veal feed, as that process was described by Strauss. Therefore, the trial court correctly concluded that there was no breach of contract.

In a related argument, Strauss alleges that M & H failed to comply with applicable laws which impliedly formed a part of the contract, thereby breaching its agreement with Strauss. Generally, unless a contract provides otherwise, all applicable law in force at the time the agreement is made impliedly forms a part of the agreement without any statement to that effect. *Ethyl Corp. v. Forcum–Lannom Associates* (1982), Ind.App., 433 N.E.2d 1214, 1220. Strauss directs this Court's attention to IND. CODE § 25–4–1–17 (1988 Ed.) and the Code of Conduct for Architects found at 804 I.A.C. 1.1–4–1 *et seq.* (1988 Ed.), which laws by implication were included in the agreement between Strauss and M & H.

IND. CODE § 25–4–1–17 provides in pertinent part:

"The practice of architecture is the performance of professional services embracing the safe, healthful, scientific, aesthetic or orderly coordination of the planning, designing, erection, alteration or enlargement of any public or private building...."

Strauss perceives a failure on the part of M & H to comply with that statute. Similarly, Strauss avers that M & H violated 804 I.A.C. 1.1–4–1:

"An architect or landscape architect shall serve and promote the public interest in the effort to improve human environment, acting in a manner to bring honor and dignity to the profession of architecture and landscape architecture with proper regard for the health and safety of the public in the performance of his duties."

■ Presumably, Strauss is suggesting that M & H did not develop a safe design with proper regard for the health and safety of the public, because the facility ultimately created an industrial waste problem. As previously noted, the design prepared by M & H was adequate for the process described by Strauss. In developing plans and specifications, M & H violat-

ed no laws which were impliedly incorporated into the contract. The trial court's conclusion that M & H did not breach its contract with Strauss is not contrary to law.

The second ground upon which Strauss sought to prevail in the lower court involved the tort theory of negligence. Strauss maintained that M & H had a duty to independently investigate and warn Strauss about potential waste disposal problems which could develop during the production of liquid veal feed. According to Strauss, the duty to investigate and warn, independent of any contractual provision to that effect, arose from M & H's status as a fiduciary.

■ An architect does not owe a fiduciary duty to its employer; rather, the architect's duties to its employer depend upon the agreement it has entered into with that employer. *Greenhaven, supra,* 463 N.E.2d at 285. An architect is bound to perform with reasonable care the obligations for which it contracted and is liable for failing to exercise professional skill and reasonable care in preparing plans and specifications according to its contract. *Id.* at 286; *see also Lukowski v. Vecta Educational Corp.* (1980), Ind.App., 401 N.E.2d 781; *Walters v. Kellam & Foley* (1977), 172 Ind.App. 207, 360 N.E.2d 199.

■ The trial court in the instant cause determined that M & H had a duty to advise Strauss that it might have a waste disposal problem, in view of the nature of the operation contemplated by Strauss. Yet such a duty was beyond the scope of the parties' agreement. The contract between Strauss and M & H stated that M & H would provide consultation upon request. Strauss never asked for consulting services from M & H regarding waste disposal or treatment. In fact, Strauss stated that the city sewage system would accept the effluent, if any, from its production process. This Court is bound to apply the law correctly to the findings of the trial court. *Alfano v. Stutsman* (1984), Ind.App., 471 N.E.2d 1143, 1145. The imposition of a duty to advise on waste disposal was erroneous.

Although the trial court found that M & H had a duty to advise on industrial waste problems, the court ultimately held that M & H was not negligent. Strauss challenges that conclusion of law, suggesting that M & H did not exercise reasonable care because it accepted, without investigation, Strauss's representations that its veal feed processing operation would be a "clean" one, the waste from which could be discharged directly into the city's sewage system.

While acknowledging that M & H professed to be a specialist in designs for the dairy industry, this Court notes that Strauss occupied a unique position in the veal feed production industry. Strauss was the developer of the liquid veal feed production process, and it was the first company to attempt to implement that process. M & H's reliance upon Strauss's statements concerning waste disposal did not fall below the requisite standard of care for architects, given Strauss's apparent expert knowledge on the production process.

Although the trial court erroneously found a duty on the part of M & H to provide advice on potential waste problems, the court correctly concluded that M & H was not negligent. The lower court was also correct in its decision that there was no breach of contract. The judgment in favor of M & H is, therefore, affirmed.

BUCHANAN, J., concurs.

GARRARD, P.J., concurs in result.