**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, Plaintiff–Appellee,**

v.

**LOCAL LODGE D354, et al., Defendants–Appellants.**

**No. 89–2406.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 14, 1989.

Decided March 15, 1990.

Rehearing and Rehearing En Banc Denied April 13, 1990.

Rodney H. Grove, Grove & Brinkmeyer, Evansville, Ind., Robert L. Dameron, Michael J. Stapp, Blake & Uhlig, Kansas City, Kan., for International Broth. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO.

Anne C. Thomas, Lacey, Terrell, Annakin, Heldt & Baugh, Evansville, Ind., for Local Lodge D354 of Cement, Lime, Gypsum and Allied Workers Div. of Intern. Broth. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO.

Robert G. Rothstein, William Wallen, David W. Wolf, Meranze & Katz, Philadelphia, Pa., for Doyle Tolbert, Leon Brothers, and Joe Bratton.

Before CUMMINGS, FLAUM and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

This case involves the right to assets and allegedly delinquent payments retained by a local labor union that broke away from an international labor union. After finding that a defective allegation of jurisdiction may be amended to preserve the subject-matter jurisdiction of this suit, we affirm the district court's grant of summary judgment in favor of the international union on the basis of the contractual provisions at issue.

On August 10, 1987, plaintiff International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO ("the International"), sued its former Local Lodge D354 as well as the Local's president, recording secretary, and financial secretary. The International brought suit under Section 301(a) of the Taft–Hartley Act (Labor Management Relations Act, 29 U.S.C. § 185(a)) to recover monthly per capita taxes,[1] records, supplies, and properties it is allegedly entitled to recover from the former Local.

The International alleges that under the terms of the contracts at issue the Local cannot avoid turning over assets and remitting per capita taxes collected up to the time that the members of the Local voted in an election supervised by the National Labor Relations Board to decertify the International as their collective bargaining representative. The International sought per capita taxes amounting to $16,851.12, later increased to $18,958.08, covering nine months of allegedly delinquent per capita taxes. The assets sought include the Local's union hall, though the International's counsel said at oral argument that the val-

---

1. The word "dues" typically refers to the total amount of money taken out of a union member's paycheck each month and collected by the local union for use by both local and international unions. That portion deducted and forwarded to the international is called the "per capita tax."

ue of that property is so slight that the International might not bother to take ownership if the International prevails in this appeal.

The Local Lodge responds that the International disingenuously ignores efforts that members of the Local made to dissociate from the International and to defect to a rival union, the International Workers of North America ("IWNA"), in advance of the formal NLRB certification election. The Local also suggests, without directly attacking the validity of the contract provisions at issue, that the International's position accords insufficient weight to the policy guaranteed by Section 7 of the Labor Management Relations Act of 1947 (29 U.S.C. § 157) granting workers the right to be represented by a particular collective bargaining representative or not as they choose.

### Jurisdiction

As the complaint was originally framed, the district judge may not have had jurisdiction to entertain the suit. The International sued an entity that is *functus officio,* that does not legally exist. Plaintiff has not pointed to a "winding up" provision in its Constitution or to any other authority to support the assertion that the Local continued to exist at the time this suit was filed. As discussed below, whatever the status of the Local before the NLRB decertified the International's affiliation with the workers, it was no longer uncertain when suit was filed, four months after the NLRB election. The election marked the demise of the International's "Local Lodge D354." The International also has sued three of the defunct Local's officers, but, as the magistrate found (R. 19 at 2), only in their official capacities.[2]

All of this raises some doubt as to the district court's jurisdiction since two opposing parties are minimally required to create a case or controversy. Though it is critical for obvious reasons that proper parties be named in lawsuits, the doubt in this case can be satisfactorily resolved.

The International should have named as defendants the present IWNA-affiliated Local and its president, recording secretary, and financial secretary. There is no problem with this amendment because it is uncontroverted that the Local, as an International and then as an IWNA local, represented the same workers, was managed by the same officials, and maintained the same collective bargaining status with the employer. Though subject-matter jurisdiction of course cannot be waived, it is noteworthy that the Local and its officers never questioned the district court's jurisdiction to determine this controversy until the panel raised the question at oral argument in this appeal. When, as here, the merits have already been decided and factual questions do not need to be resolved regarding prejudice to the correctly named defendant, it would be a meaningless gesture to remand so that the plaintiff could amend its pleading under Rule 15 of the Federal Rules of Civil Procedure. Instead the sensible course is for this Court to permit amendment under 28 U.S.C. § 1653.[3] *Stockman v. LaCroix,* 790 F.2d 584, 587 (7th Cir.1986) (establishing complete diversity jurisdiction); *Moore v. Coats Co.,* 270 F.2d 410, 412 (3d Cir.1959) (establishing statutory venue requirement). Therefore, we shall consider the complaint as amended to cover the present IWNA Local 354 and its president, recording secretary, and financial secretary as defendants. This is not contrary to *Newman–*

---

**2.** One attorney for the Boilermakers suggested otherwise at a hearing before the magistrate (defendants' Appendix "C" at 76), yet there was no formal objection to this finding of the magistrate or before the district judge, and the complaint referred to each named defendant by title. Similarly, the International's brief in this Court does not contest this finding and the district court did not take issue with it.

**3.** 28 U.S.C. § 1653 provides:

> **Amendment of pleadings to show jurisdiction**
>
> Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.

This provision of the Judicial Code is to be liberally construed. *Miller v. Stanmore,* 636 F.2d 986, 990 (5th Cir.1981); *John Birch Soc'y v. National Broadcasting Co.,* 377 F.2d 194, 198–199 (2d Cir.1967).

*Green, Inc. v. Alfonso–Larrain,* —— U.S. ——, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893, or *Field v. Volkswagenwerk AG,* 626 F.2d 293, 305 (3d Cir.1980), for the amendment here represents the facts as they existed at the commencement of the suit and therefore accords even with *Anderson v. Watt,* 138 U.S. 694, 702–703, 11 S.Ct. 449, 451, 34 L.Ed. 1078 which was decided prior to the enactment of the predecessor to Section 1653. Therefore, we too reach the merits.[4]

### Merits

### Background

1. *The Merger Agreement.*—A brief recital of the facts in the light most favorable to the Local begins in April 1984, when the Boilermakers' International union merged with, and subsumed as a division, the United Cement, Lime, Gypsum and Allied Workers International Union. The merged International is the plaintiff in this case. One local affiliate of the Cement Division was Local 354. The Merger Agreement between the International and the Cement Union did not address the method by which a subordinate unit might quit the newly merged International. The Merger Agreement did, however, contain two provisions relied upon heavily by the Local in this appeal. A third is cited by the International.

The first provision cited by the Local is the preamble, which addresses conflicts between the Merger Agreement and the International's Constitution:

> The Constitution of the [International] will be the supreme law of the merged organization.

> All provisions of this [Merger] Agreement are binding and those provisions which conflict with the above referred to Constitution will expire * * * on the convening date of the Twenty–Eighth Consolidated Convention. (defendants' Appendix "I" at 1, Preamble).

The Twenty–Eighth Consolidated Convention referred to in the preamble is not to be convened until 1991.

The second provision of the Merger Agreement cited by the Local is the "retain clause":

> Jurisdiction of District and Local Lodges. Local Union Charters held by the current Local Unions in the [Cement Union] will have issued in their stead Boilermaker Charters carrying the present local numbers preceded by a capital D. *Each Local Lodge will retain its Local Union treasury.* (defendants' Appendix "I" at 2, Art. V, § 3) (emphasis added).

The International calls attention to a third provision of the Merger Agreement, the "transfer clause":

> Transfer and Title of Assets. On the effective date of the merger all property; real, personal, and mixed; and all rights, titles, and interest; either legal or equitable; and any monies, funds or property; tangible or intangible, of the [Cement Union] and affiliated District Councils shall, by virtue of the merger, be transferred to and vested in the merged organization in accordance with the Constitution. (*id.* at 8, Art. XXXIII, § 3).

2. *The Purported Disaffiliation and NLRB Election.*—In August 1986 members of Local Lodge D354 lost faith in the newly merged International following an election for officers of the International. This prompted a series of meetings by Local members regarding a proposal to drop the Local's affiliation with the International. After extensive discussion, members of the Local held an internal vote on October 28, 1986, voting unanimously to "disaffiliate" from the International. The Local's position is that it ceased to exist as an affiliate of the International on that date. During this same period, the members voted by secret ballot to select the IWNA as their authorized collective bargaining agent. In November 1986, officers of the Local gave the employer, the Gold Bond

---

4. For convenience, this opinion will use the term Local, unless otherwise specified, to refer to the defunct International's Local Lodge D354 as well as the new IWNA local to which members of Lodge D354 defected. Because amendment comes so late, the caption of this appeal remains unchanged.

Building Products Division of the National Gypsum Company in Shoals, Indiana, signed forms from most if not all of the members of the Local purportedly (1) revoking authorization to deduct per capita taxes for the benefit of the International, and (2) authorizing the employer to deduct per capita taxes on behalf of the IWNA.

It was not until January 20, 1987, however, that members or officials of the Local filed a petition with the National Labor Relations Board seeking decertification of the International and certification of the IWNA as the Local's collective bargaining representative.[5] The election was held on March 26, 1987. Workers overwhelmingly voted to make the IWNA the exclusive bargaining agent of the individuals who had been members of the defunct Local.[6] Decertification occurred on April 8, 1987, ousting the International as the Local's bargaining agent.[7]

3. *The Constitution.*—On May 6, 1987, the International's president wrote a standard "disbanding" letter to the defendant officers of the Local, referring to the "quorum" surrender provision in the International's Constitution:

As a result of the N.L.R.B. election * * *, Local Lodge D354 no longer has ten (10) active members and is automatically disbanded in accordance with Article V, Section 6 of the International Brotherhood Constitution, which states in pertinent part:

"Any Local Lodge having less than ten (10) active members shall be automatically disbanded and its Charter returned to the International Brotherhood, together with all books, records, properties, funds and assets * * * owned or held by such Local Lodge at

the time of such disbanding, which shall become the property of the International Brotherhood."

(letter in plaintiff's Appendix at 171; provision found at 75.)

In addition to this provision, the International's claim rests partially on another surrender provision in the International's Constitution:

The funds and property of a subordinate body are trust funds for the benefit of its members and shall not be divided in any manner among the members of the subordinate body. Upon the surrender, forfeiture or revocation of its charter * * *, all funds belonging to such subordinate body shall be forwarded promptly to the International Secretary–Treasurer and all real estate and other property owned or held by such body shall be immediately transferred * * * to the International Board of Trustees of the International Brotherhood.

(plaintiff's Appendix at 129, Art. XXXVI, § 2.)

One final and important set of provisions from the Constitution cited by the International is that set which prohibits disaffiliation. Article XXIX, § 2(a) and Article XVII, § 1(i); see *International Brotherhood of Boilermakers v. Local Lodge D504, International Brotherhood of Boilermakers*, 866 F.2d 641, 644 n. 8 (3d Cir. 1989), certiorari denied *sub nom. Marositz v. International Brotherhood of Boilermakers*, —— U.S. ——, 110 S.Ct. 59, 107 L.Ed.2d 27.

For its part, the Local cites Article XXXI, § 1 of the Constitution, which requires suspension of "any member" who falls two months in arrears on dues "from

---

**5.** Section 9(c)(1)(A)(ii) of the National Labor Relations Act provides that employees may file a petition calling for an NLRB hearing on whether a labor organization should continue to be regarded as the representative of the majority of the employees in the relevant unit. If a question of representation is found, the NLRB is to hold a secret ballot election on the issue of decertification. 29 U.S.C. § 159(c)(1)(A)(ii).

**6.** According to the International's complaint in this case, the International revoked the Local's

charter on March 17, 1987. In a subsequent pleading, however, the International stated that the revocation was not effective until after the Board certified the results of the election.

**7.** The record in this case gives various dates for formal decertification of the International by the NLRB. The magistrate to whom this case was assigned used April 9, 1987. On this appeal from summary judgment, we will use April 8, 1987, the earliest date referred to in the record.

all rights, privileges, and benefits" of the International (plaintiff's Appendix at 123).

4. *The Dues Checkoff Cards and Escrowed Dues.*—The International also points to Article III, § 1, of the labor agreement between the employer and the Local, which the International interprets to have contractually committed the Local to an enforceable, irrevocable dues checkoff for the International's benefit until April 1987 (plaintiff's Appendix at 194). The employer believed this provision in the collective bargaining agreement then in place might be irrevocable. Therefore, after being presented with the newly executed dues checkoff authorization cards in favor of the IWNA in November 1986, the employer began placing the per capita taxes in an interest-bearing account in a local bank. Per capita taxes thus escrowed commenced with the payroll period ending December 4, 1986, and continued through the payroll period ending April 26, 1987. The International also claims it did not receive from the Local per capita taxes for the months of August through November of 1986.

5. *Opinions Below.*—On November 2, 1988, Magistrate Hussman determined that under the terms of the International's Constitution and the 1984 Merger Agreement between the Boilermakers' International and the Cement Union, which bound all Cement Union sub-units such as Local D354, members of the Local were required to pay per capita taxes to the International until the International was no longer certified as the bargaining agent for members of the Local. Therefore the magistrate recommended awarding the International the $18,958.08 it claimed. The magistrate found that the Local's purported "disaffiliation" had no effect and that meaningful decertification did not occur until the April 8, 1987 pronouncement by the NLRB. Regarding assets held by the Local, the magistrate found that the relevant provision in the Merger Agreement was sufficiently ambiguous to require the district court to conduct "fuller factual findings before rendering a decision in that regard" (defendants' Appendix "B" at 13). Therefore, he reached no conclusion regarding the ownership of assets.

In an unreported decision issued June 6, 1989, the district court found that "the sole intent of the members of Local Lodge D354 was simply to disaffiliate" from the International, "not to leave their local" (plaintiff's Appendix at 10), suggesting a continuing contractual obligation to the International until formal decertification. The court concluded on the basis of case law, the other provisions at issue, and logic that the intent of the "quorum" provision of the International's Constitution is to address problems created by retirement, death, and other causes of attrition unrelated to a "disaffiliation" effort. Under that view, the Local continued to exist for the purpose of remitting per capita taxes to the International until the results of the decertification election were final. Therefore, the Local presented no genuine issue of fact to be decided by a jury that could prevent enforcement of the binding agreements requiring that per capita taxes be forwarded to the International. In settling the disputed disposition of the assets in favor of the International, the district court relied heavily upon two circuit court opinions not available when the magistrate issued his recommendations. *International Brotherhood of Boilermakers v. Local Lodge D504, International Brotherhood of Boilermakers*, 866 F.2d 641 (3d Cir.1989), certiorari denied *sub nom. Marositz v. International Brotherhood of Boilermakers*, — U.S. —, 110 S.Ct. 59, 107 L.Ed.2d 27; *International Brotherhood of Boilermakers v. Local Lodge D111 of the Cement, Lime, Gypsum and Allied Workers Division of the International Brotherhood of Boilermakers*, 858 F.2d 1559 (11th Cir. 1988), affirming *International Brotherhood of Boilermakers v. Local Lodge D111*, 681 F.Supp. 1570 (S.D.Ga.1987) (includes discussion of federal labor policies).

## Analysis

Summary judgment is appropriate when there is no genuine issue of material fact, so that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th

Cir.1987). Existence of a factual dispute in itself will not defeat a motion for summary judgment if the issues involved in the dispute are not material in the sense that they could not affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202. We review *de novo* the district court's entry of summary judgment. *Greer Properties, Inc. v. LaSalle Nat'l Bank*, 874 F.2d 457, 459 (7th Cir. 1989).

▮▮▮▮ In the absence of ambiguity, contracts are to be construed by courts as a matter of law. *Local Union 597 v. Mosbeck Indus. Equipment, Inc.*, 856 F.2d 837, 840 (7th Cir.1988). As has been widely held by other courts considering these issues, we hold that the relevant provisions of the Merger Agreement and the International's Constitution are not ambiguous when considered individually or together. See *Local Lodge D504*, 866 F.2d at 646 (collecting cases).

The precise inquiries called for in this appeal, involving the same provisions, have been made recently by the Eleventh and Third Circuits. *International Brotherhood of Boilermakers v. Local Lodge D504, International Brotherhood of Boilermakers*, 866 F.2d 641 (3d Cir.1989), certiorari denied *sub nom. Marositz v. International Brotherhood of Boilermakers*, — U.S. —, 110 S.Ct. 59, 107 L.Ed.2d 27; *International Brotherhood of Boilermakers v. Local Lodge D111 of the Cement, Lime, Gypsum and Allied Workers Division of the International Brotherhood of Boilermakers*, 858 F.2d 1559 (11th Cir. 1988). The result was the same in each case, in favor of the International on both the dues and assets questions. The Local suggests that this Court, in *International Brotherhood of Boilermakers v. Local Lodge 714, International Brotherhood of Boilermakers*, 845 F.2d 687 (1988), made observations and findings that should cause us to depart from the analysis applied by the other two courts of appeals. *Local Lodge 714* involved a somewhat different context, however, and to the extent it touched on the issues relevant to this appeal it is consistent with the reasoning of the other circuits.

The construction applied by the Eleventh Circuit to the relevant provisions, and then elaborated on by the Third Circuit, is persuasive and need not be repeated here in toto. The Eleventh Circuit was presented with facts quite similar to those in the present case in *Local Lodge D111*, which was also on appeal from summary judgment in favor of the International. Regarding the assets issue, the Eleventh Circuit found that the "retain clause" of the Merger Agreement was by its terms and placement clearly intended to address concerns that members of Cement Union locals might have about the effects the merger would have on local treasuries. The provision established that the Cement Union locals would not have to surrender their treasuries to the general fund of the International after the merger. Under this reading, the clause was not intended to amend or void the surrender provisions of the International's Constitution. *Local Lodge D111*, 858 F.2d at 1561–1562. This reading of the provisions is bolstered by the fact that the retain clause is found within Article V of the Merger Agreement, entitled "Jurisdiction of District and Local Lodges." *Id.* at 1562. Thus, as long as a local remained affiliated with the International, it was entitled to hold on to its assets. Yet when active membership of a local fell below ten, a local was to be considered disbanded and therefore required to forfeit its assets under the International's Constitution. *Id.* at 1562–1563. The Eleventh Circuit found the per capita tax issue even more straightforward under the obligations set forth in Article XXIII, § 3(b) of the International's Constitution (plaintiff's Appendix at 104) and Article XII of the Merger Agreement (defendants' Appendix "I" at 3), provisions which require monthly payment of per capita taxes by all local unions. *Id.* at 1564. In the case of Local D354, that amount was the base labor rate of $8.93, times a multiplier of 1.65, times the number of members in the Local.

While it also involved circumstances similar to the present case, the Third Circuit case was an appeal following a bench trial.

Nevertheless, the findings of the Third Circuit are consistent with those of the Eleventh Circuit and were based on plenary construction of the same provisions at issue here. *Local Lodge D504*, 866 F.2d at 645. Because there is no discrepancy between the language of the Merger Agreement and the International's Constitution, there is no "conflict" to resolve under the preamble to the Merger Agreement. *Id.* at 646.

The Local also attempts to find support in the provision of the International's Constitution which requires suspension of "any member" who falls two months in arrears on dues "from all rights, privileges, and benefits" of the International. Whatever the uses to which this provision may be put, it can hardly be read as a procedure by which the Local may avoid nine months of per capita payment obligations. In the context of the Constitution as a whole it must be read as a tool for the International's use in prodding individual members into paying union dues, not as an *ex post* method of "disaffiliation" through the back door of dues delinquency.

This Court's decision in *Local Lodge 714* involved an attempt by the International to impose a trusteeship over a former local under Section 302 of the Landrum–Griffin Act (Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 462), which allows for the creation of trusteeships for any of four enumerated purposes. As in this case, the overwhelming majority of Lodge 714 voted to disaffiliate from the International and to affiliate with the IWNA. Members of Lodge 714 purported to form a new IWNA local, taking with them the books and bank account of Lodge 714. After members of the new IWNA local petitioned the NLRB for an election to decertify the International and to certify the IWNA as their new collective bargaining representative—but before election was held—the International attempted to impose a trusteeship on the local and appoint new officers for it. *Id.* at 690. The International then sued in federal district court for an injunction to enforce the trusteeship and force officers of the local to turn over the books and money to its trustee. The district court granted the injunction. See 663 F.Supp. 1071 (N.D.Ill.1987).

With regard to the "quorum" provision of the International's Constitution, this Court found that the injunction could be sustained if ten or more members of Lodge 714 remained in the local when the trusteeship was imposed. But if membership had dropped below ten, then under the International's Constitution the local could not be a "subordinate body" within the reach of trusteeships permitted by Section 302. *Local Lodge 714*, 845 F.2d at 692. Because the district court had not made a finding as to the number of members in the local, the injunction was vacated and the case remanded to make that determination. *Id.* at 695.

*Local Lodge 714* does not prevent enforcement of either the forfeiture or the per capita tax provisions that bind the Local in this case. First, the Court did not reach a holding as to what actions a local must take to avoid the contractual obligations at issue here. It focused on the essential requirements the International needed to meet before imposing a trusteeship over Local 714. Second, regarding forfeiture, the Court explicitly stated that if Local 714 had been automatically disbanded for want of a quorum, the International might well have recourse under Section 301 to enforce the forfeiture provision. *Local Lodge 714*, 845 F.2d at 693. Even beyond that, the Court observed that the prohibition against disaffiliation found in the International's Constitution may be enforceable as a matter of contract law. *Id.* at 695. Finally, there is no contradiction between the Court's finding that a trusteeship could not be imposed on a defunct local union—as there is no entity over which to impose the trusteeship—and the rule followed consistently by courts that a local does not escape its contractual obligation to forward per capita taxes to an International " 'until the appropriate procedures [are] completed to remove the International as the bargaining representative.' " *Local Lodge D504*, 866 F.2d at 647 (quoting *International Brotherhood of Boilermakers v. Local Lodge D405*, 699 F.Supp. 749 (D.Az.1988)). Contracts be-

tween labor unions would be worth little if they could be repudiated as easily as the Local suggests.

The Third Circuit recently explained its holding in *Lodge D504* as having rested on the fact that in that case "there appeared to be real confusion over who was the proper bargaining representative for the workers who had resigned from the Boilermakers Union." *Tile, Marble, Terrazzo, Finishers, Shopworkers and Granite Cutters Intern'l Union AFL–CIO, et al. v. Tile, Marble, Terrazzo, Helpers and Finishers Local 32, et al.*, 896 F.2d 1404, 1417 (1990). Thus for the sake of "stability in the workplace," it appeared reasonable in *Lodge D504* to draw the line regarding the Local's responsibility for per capita payments at the time of the decertification election. *Id.* at 1417–1418.

So, too, in the present case, the employer and the International were not certain about the proper bargaining representative until the results of the decertification election were known. The Local petitioned for the decertification election in order to obtain a clear result regarding representational status. The employer's confusion is evident in the fact that it placed the per capita taxes in escrow. The International's lack of certainty was demonstrated by the fact that it did not invoke its forfeiture clause until after it had lost the decertification election. See *Tile, Marble*, at 1418 (citing same factor).

Contrary to the assertions of the Local, there are no questions of intent or motivation to be resolved at trial. The Local admits that it has not paid the past due per capita payments in the amount demanded by the International or surrendered all assets demanded. The Local does not raise questions about the validity of the provisions at issue, except to request that they be construed differently than we construe them. It is uncontested that members of the Local, whatever they intended to accomplish vis-à-vis the International, did not resign en masse from the Local (perhaps relieving individual workers of the duty to pay any union dues whatsoever), but in-

stead remained members of the Local under its new name and affiliation. District Court op. at 7; defendants' brief at 41. Nor does the Local contest that the NLRB certified the IWNA as the bargaining representative for the Local on April 8, 1987. On these facts, there is no issue for trial and summary judgment was appropriate.

The Local's broad point that a decision in favor of the International denies the right of workers to unionism based on consent is simplistic. It has long been recognized that there are good reasons to think that enforcing such provisions strengthens the right of workers to bargain collectively in the long run. See *Bradley v. O'Hare*, 11 A.D.2d 15, 202 N.Y.S.2d 141, 148–149 (N.Y. App.Div.1960) (Breitel, J.); for a more general statement of this principle, see also *Plumbers & Pipefitters v. Local 334*, 452 U.S. 615, 623–624, 101 S.Ct. 2546, 2551, 69 L.Ed.2d 280 (industrial peace encouraged through enforcement of labor agreements). Members of the Local were not held "captive" to the International. Their unincorporated association is simply required to meet the contractual responsibilities it freely assumed and did not shed until the NLRB election relieved it of those responsibilities.

## Conclusion

Surprisingly, there was confusion at oral argument as to who now holds the disputed back per capita payments, the employer or the International. Consistent with this opinion, it is the responsibility of IWNA Local 354 and its officers to see that the International receives the $18,958.08 in dispute, whatever fraction of that amount the International might now hold. It is also the responsibility of the Local to surrender to the International the assets accumulated prior to decertification that the International chooses to accept.

## ORDER

On consideration of the petition for rehearing and suggestion for rehearing *en banc* filed by defendants-appellants on March 29, 1990, no judge in active service has requested a vote thereon, and all of the

judges on the original panel have voted to deny a rehearing.

As Illinois Appellate Justice Ulysses S. Schwartz sagely observed about many petitions for rehearing:

> Petitions for rehearing are sometimes used to serve a secondary purpose—to enable counsel to assuage the digestive pains which follow defeat in a hard fought case where stakes are high. This court is comprised of men who have practiced law and experienced such pains. We are not unsympathetic to the use of the petition for its secondary purpose, even though it is not in accord with the rules. However, we have observed that the indignation is often in inverse ratio to the worthiness of the cause.[*]

IT IS ORDERED that the aforesaid petition for rehearing be, and the same is hereby, DENIED.

[*] *Illinois Central R. Co. v. Michigan Central R. Co.,* 152 N.E.2d 627, 645 (Ill.App. 1st Dist.1958).