**In re GREENWOOD AIR CRASH.**

**No. IP93–9446–C–T/G.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 3, 1995.

Harry A. Wilson, Indianapolis, IN, and James T. Crouse, San Antonio, TX, for Mark Doucey and Jacque Doucey.

Richard M. Malad, Cohen & Malad, Indianapolis, IN, for June Bennett and Julie Bennett.

Patricia McCrory and Harrison Moberly, Indianapolis, IN, for State Farm Insurance.

Robert E. Badger, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, DC, and Jeffrey L. Hunter, Asst. United States Attorney, Indianapolis, IN, for the U.S.

Steven E. Springer, Kightlinger & Gray, Indianapolis, IN, and J. David Hollingsworth, Hollingsworth & Meek, Indianapolis, IN, for Solar Sources, Inc.

Stephen E. Arthur, Bose McKinney & Evans, Indianapolis, IN, and Kenneth D. Ross, Ross & Harrington, Chicago, IL, for Control Systems Engineering/June Bennett.

Patrick M. Graber, McCullough Campbell & Lane, Chicago, IL, and Richard D. Wag-

ner, Krieg Devault Alexander & Capehart, Indianapolis, IN, for Carol Mullen.

## ENTRY DISCUSSING CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFFS' MOTION TO STRIKE EXHIBITS

TINDER, District Judge.

### I. INTRODUCTION

This matter comes before the court upon cross motions for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and upon a motion to strike certain exhibits. Plaintiffs Mark and Jacque Doucey (hereinafter "Plaintiffs") filed a motion for partial summary judgment. Defendant Solar Sources, Inc. (hereinafter "Defendant") filed a response and a cross motion for summary judgment on the same issues. Plaintiffs then filed a motion to strike certain exhibits submitted by Defendant.

### II. BACKGROUND FACTS AND PROCEDURAL HISTORY

The subject of this lawsuit is a mid-air collision that occurred on September 11, 1992 in Greenwood, Indiana. The facts are set forth in detail in the court's entry dated January 19, 1995. The facts relevant to the instant motions involve the Piper Saratoga ("Piper") aircraft only and are set forth below.

The September 11th flight was a business flight on behalf of Control Systems Engineering, Inc. ("CSE"); all passengers were employees of CSE. William Bennett was one of the owners of CSE and Mark Doucey's supervisor. Mr. Bennett was the pilot of the Piper and he sat in the left front seat of the aircraft. His daughter, Julie Bennett, sat in the back of the aircraft. Mr. Doucey sat in the right front seat of the Piper. The Piper was a six-seat passenger aircraft. Both seats in the front of the plane were equipped with controls, thus the aircraft could be piloted from either seat. The person in the left-hand seat was generally the pilot. In this case, that person was Mr.

Bennett. Mr. Doucey, who sat in the right front seat, held a single-engine private pilot's rating and an instrument rating; however, he was not current on his ratings and was, therefore, not eligible to pilot an aircraft.

The flight was initiated by Mr. Bennett. The undisputed purpose of the flight was to visit a maintenance facility at Terry Airport and to take photographs of a job site near Rushville. After the stop at Terry Airport, the passengers decided to go to Greenwood Airport before going to Rushville. During the flight, Mr. Doucey videotaped locations on the ground until just before the collision.[1] He did not wear his headset, thus he did not monitor any of the communications between Mr. Bennett and the air traffic controller.

### III. PLAINTIFFS' MOTION TO STRIKE

■ Plaintiffs move to strike Defendant's Exhibits 1–4 submitted in support of its response to Plaintiffs' motion for summary judgment/brief and in support of its cross motion for summary judgment. Exhibits 1 and 2 are the pilot logbooks of Doucey and Bennett. The pilot logbooks were produced by Plaintiffs pursuant to a discovery request under Rule 34 of the Federal Rules of Civil Procedure. Plaintiffs move to strike Exhibits 1 and 2 because they are not sworn or certified copies and attached to a properly authenticated affidavit meeting the requirements of Rule 56(e) of the Federal Rules of Civil Procedure.

■ Production of a document by a party constitutes an implicit authentication of that document. *United States v. Brown,* 688 F.2d 1112, 1116 (7th Cir.1982). *See also South Cent. Bank v. Citicorp Credit Ser.,* 863 F.Supp. 635, 645 (N.D.Ill.1994) (applying the above standard in the summary judgment context). Thus, Plaintiffs' challenge is without merit because Defendant obtained the documents from Plaintiffs themselves and they were implicitly authenticated when received. Defendant's attorney submitted an affidavit stating that the documents were received in response to a discovery request.

---

**1.** Mr. Doucey did not know exactly how long prior to the collision he was videotaping, but he estimated it was somewhere between 30 seconds and 2 minutes.

The Exhibits can be considered in support of a summary judgment motion.[2] Therefore, Plaintiffs' motion to strike Exhibits 1, 2, and 3 is hereby **DENIED**.

█ Plaintiffs also move to strike Exhibit 4 which consists of statements of Mrs. Doucey and Mrs. Bennett contained within a certified copy of the Indiana State Police Supplemental Case Report. The certified police report contains the following summary from the police officer of his interview with Mrs. Doucey:

> [Mrs. Doucey] [a]dvised that he [Mark] had told her the day before the incident that he was going flying the day of the incident and that the purpose of the flight was to practice flying skills (because at least one of them and I am not sure which one, had a flight test to take the following week).

(Def.'s Ex. 4.) The police report also relates a statement made by June Bennett on the same date. Mrs. Bennett stated that the reason for the flight was for them "to look at a maintenance facility and to practice and stay current." (Def.'s Ex. 4.).

█ Plaintiffs object to both of these statements as inadmissible hearsay. There are three layers of hearsay contained in the statements, the statements by Doucey and Bennett to their wives, the statements by their wives to the police officers, and the statements contained in the police report. However, all three layers of hearsay qualify for exceptions. The statements by Doucey and Bennett themselves are admissible both as statements of intention pursuant to Rule 803(3) of the Federal Rules of Evidence and as non-hearsay as admissions of a party-opponent pursuant to Rule 801(d)(2) of the Federal Rules of Evidence. Because the wives are also plaintiffs in this lawsuit, their statements are admissible as admissions. The police report is admissible pursuant to Rule 803(8). Often police reports are excluded from the hearsay exception under Rule 803(8) because in making the report, the police officer relies on statements of others which may not be trustworthy. *Miller v. Field,* 35 F.3d 1088, 1091 (6th Cir.1994). However, in this case, the statements relied upon in the police report are themselves admissible pursuant to a different hearsay exception. Thus, there is not the risk of admitting otherwise inadmissible statements through the police report. The police report is sufficiently trustworthy to be admitted pursuant to Rule 803(8) of the Federal Rules of Evidence. *See Clark v. Clabaugh,* 20 F.3d 1290, 1294–95 (3rd Cir.1994). Therefore, Plaintiffs' motion to strike Exhibit 4 is hereby **DENIED**.

## IV. CROSS MOTIONS FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

█ Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A party moving for summary judgment initially has the burden of demonstrating the absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Covalt v. Carey Canada, Inc.,* 950 F.2d 481, 482 (7th Cir.1991).

█ If the moving party carries this burden, the opposing party then must "go beyond the pleadings" and present specific facts which show that a genuine factual issue exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Becker v. Tenenbaum–Hill Assocs.,* 914 F.2d 107, 110 (7th Cir.1990). The opposing party, however, must do more than create a mere "colorable" factual dispute to defeat summary judgment; disputed facts must be outcome determinative. Irrelevant or unnecessary facts do not preclude sum-

---

**2.** Exhibit 3 is Defendant's "Pilot Logbook Comparison." Exhibit 3 merely summarizes the information in Exhibits 1 and 2. Because there are no independent facts contained within Exhib- it 3, it will be considered as argument rather than a supporting exhibit; it is considered as such and not as independent evidence.

mary judgment even when they are in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *International Bhd. of Boilermakers v. Local D354,* 897 F.2d 1400, 1406 (7th Cir.1990).

In considering a summary judgment motion, a court must draw all reasonable inferences "in the light most favorable" to the opposing party, *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir. 1991), and must resolve any doubt against the moving party. *Becker,* 914 F.2d at 110. Nevertheless, if the opposing party fails to meet the standard of Rule 56(c), summary judgment is mandatory. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Anderson,* 477 U.S. at 248–50, 106 S.Ct. at 2510–11.

## B. Discussion

Plaintiffs brought this motion for partial summary judgment to preclude a possible negligence claim against Mr. Doucey. Mr. Doucey moved for summary judgment on the issue of whether he had a legal duty to "see and avoid" other aircraft. The existence of this legal duty would be necessary for any other party to prevail against him on a claim of negligence. *Strauss Veal Feeds v. Mead & Hunt, Inc.,* 538 N.E.2d 299, 303 (Ind.Ct.App.1989). Absent a duty, there can be no negligence. *Id.* The existence of a duty is a question of law for the court to determine. *Claxton v. Hutton,* 615 N.E.2d 471, 474 (Ind.Ct.App.1993). Thus this issue is one that is generally appropriate for a motion for partial summary judgment.

The sole issue on the cross motions for partial summary judgment is whether Mr. Doucey had a duty to help Mr. Bennett "see and avoid" other aircraft. Plaintiffs assert that there was no such duty. Solar Sources, on the other hand, urges the court to find such a duty as a matter of law. Solar Sources asserts that this duty exists because Mr. Doucey was one of the pilots of the Piper. Furthermore, Solar Sources asserts that even if he was not a pilot, he had a duty because he was the right front seat passen-

ger of the aircraft. Each of these arguments will be addressed in turn.

## 1. Duty Arising Because Doucey was a Co-pilot of the Aircraft

Solar Sources argues that there is a genuine issue of material fact as to whether Doucey was a pilot of the Piper. First, in deciding this question, the only relevant time-frame is the time immediately prior to the collision. At that time, there is no dispute that Bennett was the pilot in radio contact with the air traffic controller. It is also undisputed that Doucey was not wearing his headset.[3] However, Solar Sources puts forth certain exhibits which it alleges create a genuine issue of material fact on this point.

First, Solar Sources relies on entries in the pilot logbooks where both Doucey and Bennett logged their flight time as a pilot. On a number of flights the two listed themselves both as pilots. Although these exhibits show that both individuals *could* serve as pilots of the Piper on the same flight, it in no way is evidence that they both were piloting the Piper on the day of the collision. Furthermore, the entries in the logbook from prior dates in which both Doucey and Bennett logged on as pilots were during flights where one pilot was simulating instrument flight. When one pilot is simulating instrument flight, the regulations require a right seat safety pilot to be present. 14 C.F.R. § 91.109. That pilot is allowed to log his time as right seat safety pilot. There is no evidence that either pilot was practicing instruments on September 11, 1992.

Second, Solar Sources relies on statements made by Mrs. Doucey and Mrs. Bennett to the effect that part of the purpose for the flight was for either one or both Doucey and Bennett to practice flying skills. These statements at best raise a possibility that Doucey intended to pilot the Piper at some point during the flight on September 11, 1992. However, the record contains no evidence that Doucey was a pilot at the time prior to the collision. It is undisputed that he was videotaping from the aircraft 30 sec-

---

**3.** Doucey was wearing his headset during the initial flight from Eagle Creek Airport to Terry

Airport.

onds to 2 minutes before the collision and that he was not wearing his headset. The evidence cited by Solar Sources does not rebut this evidence nor does it create a genuine issue of material fact as to whether Doucey was piloting the aircraft.[4] No reasonable jury could find that Doucey was the pilot of the Piper during the relevant time-frame. Accordingly, Plaintiffs' partial motion for partial summary judgment is hereby **GRANTED** on this issue. Mark Doucey was not a pilot of the aircraft at the time of the collision.

### 2. Duty Arising From Doucey's Position as Front Right Seat Passenger

Solar Sources also asserts that even if Doucey was not the pilot, he had a duty to "see and avoid" other aircraft arising from his position in the front right-hand passenger seat. In support of this duty, Solar Sources cites an information manual, case law, and expert opinion. None of the sources cited by Solar Sources is sufficient to find a legal duty to "see and avoid" other aircraft.

First, Solar Sources cites the Airman's Information Manual and expert opinion to stand for the proposition that the right seat passenger has a duty to scan the sky for other aircraft. The Airman's Information Manual states:

> Scanning the sky for other aircraft is a key factor in collision avoidance. It should be used continuously by the pilot and copilot (or right seat passenger) to cover all areas of the sky visible from the cockpit.

Airman's Information Manual § 8–6(C). Although this manual clearly states that the right seat passenger should scan the skies for other aircraft, it does not create a legal duty to do so. The manual does not state that this is a mandatory obligation. Moreover, the manual itself merely sets forth guidelines for pilots. There is no requirement stating that all pilots must follow the guidelines. The existence of a duty upon which to base a claim of negligence must be found as a matter of law. *Claxton*, 615 N.E.2d at 474. The duty arises out of a

requirement to act in a certain manner. Without such a legal requirement, a party cannot be sued for negligence.

The expert opinion cited by Solar Sources suffers from the same problem as the manual. That an expert may have their right seat passenger scan the skies to aid them in seeing other aircraft does not mean those right seat passengers have a legal duty to do so. One expert, James Hunley, states:

> Even my kids when they fly with me or anyone else that flies with me I try to explain aviation, flying to them. And if I'm teaching a student I say, by God, two sets of eyes are better than one. Keep you [sic] eyes out. If you see anything just let me know. That's my answer to your question.

(Pls.' Ex. 7 at 51.) Again, it seems an excellent idea to have as many eyes as possible scanning the skies for other aircraft. However, the court does not take Mr. Hunley's statement to stand for the proposition that if he was in a mid-air collision, the law would submit his children to suit for negligence. As set forth above, a preferred course of conduct in not necessarily a legally mandatory one.

None of the cases cited by Solar Sources actually stand for the proposition that the front right seat passenger can be sued for negligence based upon a failure to scan the skies for other aircraft. The only relevance of *Transco Leasing Corp. v. United States*, 896 F.2d 1435 (5th Cir.1990), is that it quotes from the Airman's Information Manual. However, the issue in that case had nothing to do with the potential liability of a right seat passenger. Thus, the case is irrelevant to the determination of the potential liability of Doucey.

In *Remo v. United States F.A.A.*, 852 F.Supp. 357, 364 (E.D.Pa.1994), the court states in passing that the duty to see and avoid aircraft falls on anyone in a position to look outside the aircraft. *Id.* at 364. The court cites no law for such a proposition.

---

4. Solar Sources also points to the fact that Doucey went through the pre-flight at the airport and that he wore his headset during the flight from Eagle Creek Airport to Terry Airport. These facts do not offer any support to Solar Sources theory that Doucey was the pilot of the aircraft immediately prior to the collision.

Furthermore, the statement is wholly collateral to the issues in that case, specifically, the negligence of the air traffic controller. Similarly, in *Doak v. United States,* 176 Av. Cas. (CCH) 17,985 (D.Ariz.1982), the court made a brief statement about the duty to scan the sky before turning to the issue of the case—the liability of the air traffic controllers. Specifically that court stated: "Hoadley actively participated in the flight of 64V from Mesa to Tucson and should have been keeping a look out for other planes at all times." *Id.* at 17,986. However, the court does not make any legal conclusion from that fact and does not discuss the possible negligence of Hoadley.

Solar Sources cited no legal basis upon which to find Doucey owed a duty as a matter of law.[5] Without such a duty, summary judgment in favor of Doucey is appropriate. Therefore, Plaintiffs' motion for partial summary judgment is hereby **GRANTED.** Doucey had no legal duty to maintain a lookout.

## V. CONCLUSION

Plaintiffs' motion to strike Defendant's Exhibits 1–4 is **DENIED.** Defendant has not shown any genuine issue of material fact to withstand Plaintiffs' motion for partial summary judgment. Moreover, the law is with the Plaintiffs on the issue of whether Doucey had a duty to scan the skies for other aircraft. Therefore, Plaintiffs' motion for partial summary judgment is **GRANTED.** Defendant's partial motion for summary judgment is **DENIED.**

ALL OF WHICH IS ORDERED.

---

**5.** The policy ramifications of finding such a duty are worth considering. To create a duty on front right seat passengers would impose upon them substantial potential liability without any ability to control the plane. On the other hand, if the passenger did have the ability to control the plane, the potential liability sought to be imposed might lead the passenger to interfere with the pilot. Neither of these potential circumstances presents a scenario which could be considered a particular enhancement to public safety. The duty suggested by Solar Sources would apply to anyone who happened to be sitting in the right front seat. This would create a duty that applied broadly without any consideration of the aptitude or ability of the front right seat passenger. Thus, from a policy standpoint, any such duty would be problematic at best and disastrous at worst.